J. B. BOHANNON, Plaintiff-Appellee,

v.

Howard A. PEGELOW,
Defendant-Appellant.

No. 80–2409.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1981.

Decided July 1, 1981.

Rudolph M. Konrad, Milwaukee, Wis., for defendant-appellant.

Curry First, Milwaukee, Wis., for plaintiff-appellee.

Before SPRECHER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

On April 7, 1978, the plaintiff, J. B. Bohannon, was arrested by a Milwaukee Vice Squad detective and charged with pandering. After the charge was dismissed, he filed this action against the arresting officer, Howard Pegelow, claiming that he was arrested without probable cause and in violation of his civil rights. The cause was tried before a jury which awarded plaintiff $10,000 in compensatory damages and $15,000 in punitive damages. The defendant appeals that award.

The evidence at trial revealed that on the night of April 7, 1978 the defendant was involved in an investigation of prostitution at the Ambassador Hotel in Milwaukee. At that time the Ambassador Hotel was operating as a commercial hotel but was also providing housing for Marquette University students. That evening, the plaintiff, a student at Marquette, was visiting a fellow student, Julene Leatherman, who lived at the hotel. Bohannon and his friend were sitting in the lobby and observed the defendant as he was attempting to contact certain alleged prostitutes. Eventually, Pegelow went upstairs and arrested a woman and her male companion. As the defendant was escorting that couple through the lobby to an awaiting police vehicle, he stopped and arrested Bohannon as well.

The defendant alleged that earlier in the evening Bohannon had initiated a conversation with him in which he offered to sell the sexual favors of his girlfriend for thirty-five dollars. The plaintiff claimed that all he ever said to the detective was a brief "How you doing?" However, based on the defendant's accusation, Bohannon was charged with pandering.

The plaintiff asserted his innocence throughout the proceedings and refused to plea bargain with the District Attorney's Office. The charge was dismissed without prejudice on April 25, 1978, and the District Attorney's Office informed Pegelow that the charge would not be reissued. Despite that knowledge, the defendant continued to investigate the plaintiff and pressed for his prosecution. There was evidence that in his zeal, the defendant manufactured and tampered with certain evidence in the case.

The plaintiff argued that Pegelow's special concern with this case arose as a result of an investigation of him by the District Attorney's Office. That probe was initiated approximately one week after plaintiff's arrest and involved that incident as well as other arrests made by the defendant. However, at the conclusion of that investigation, no criminal charges were filed against Pegelow.

Utilizing a special verdict form, the jury found that the defendant was not acting in good faith when he arrested the plaintiff and that his actions deprived the plaintiff of liberty without due process of law. Additionally, the jury concluded that the defendant had acted wantonly and maliciously, thereby justifying punitive damages.

The defendant raises four issues on appeal. First, appellant argues that the trial court erred by admitting the lay opinion testimony of Julene Leatherman in which she suggested that the arrest was motivated by racial prejudice. The appellant claims that the testimony was merely a personal opinion regarding the mental state of another and was therefore incompetent evidence.[1] However, Federal Rule of Evidence 701 permits lay opinion testimony and does not limit the subject matter to which it can relate. In support of his argument, appellant cites *Bridges v. United States*, 199 F.2d 811 (9th Cir. 1952); *United*

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. In his brief, appellant phrases this argument in terms of relevancy; however, clearly he at- tacks the competency of this evidence since he also argues that this testimony should have been excluded because it related to a crucial issue in the case, see infra.

*States v. Rosenberg*, 108 F.Supp. 798 (N.Y.), aff'd 200 F.2d 666, *cert. den.*, 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384 (1953), and *Schindler v. United States*, 221 F.2d 743 (9th Cir.), *cert. den.*, 350 U.S. 938, 76 S.Ct. 310, 100 L.Ed. 819 (1956). Initially, it should be noted that all of those cases were decided prior to the promulgation of Rule 701. Additionally, those cases are clearly distinguishable. *Bridges* was a criminal case in which the court excluded opinion testimony proffered as evidence of character. *Rosenberg*, also a criminal case, involved the exclusion of opinion testimony relating to another witness' credibility. In *Schindler*, the court merely concluded that opinion testimony as to the defendant's intent was irrelevant because it was not an element of the offense charged, see *Schindler v. United States*, 208 F.2d 289 (9th Cir.), *cert. den.*, 347 U.S. 938, 74 S.Ct. 633, 98 L.Ed. 1088 (1954).

Appellant has cited no case decided under Rule 701 which has excluded lay opinion testimony as to the mental state of another. However, there are cases which have specifically permitted such testimony,[2] see *John Hancock Mutual Life Insurance Co. v. Dutton*, 585 F.2d 1289, 1293–94 (5th Cir. 1978); *Himmelbrand v. Harrison*, 484 F.Supp. 803, 806 (W.D.Va.1980). An analysis of Rule 701 supports those decisions. If Congress had intended to limit the competency of lay opinion testimony it could have so stated as it did in other Rules of Evidence, see Rules 404, 608(b), 609(a). However, Congress did not do so and appellate courts should not graft exceptions and limitations upon the Rules of Evidence.

■ This does not mean that lay opinion testimony as to another person's mental state must be admitted by the trial court. The Rule states that the testimony must be "helpful to a clear understanding of his [the witness'] testimony or the determination of a fact in issue." Additionally, the considerations outlined in Rule 403 apply. Thus, the decision as to admissibility is within the sound discretion of the trial judge and the issues involved are peculiarly suited to his determination. An appellate court is hardly in a position to reevaluate, based on a cold record, the helpfulness of certain testimony or the subtle balancing of factors contained in Rule 403. The trial judge's decision on such issues must be a clear abuse of discretion to justify reversal and a new trial.

■ The appellant claims that the trial court abused its discretion in admitting Leatherman's opinion because the rest of her testimony did not contain any facts indicating social prejudice. Therefore, appellant argues, the opinion could not have been "rationally based on the perception of the witness," as required by Rule 701. However, it is undisputed that the witness observed the arrest. In a similar situation, the Fifth Circuit stated:

> When, as here, the witness observes first hand the altercation in question, her opinions on the feelings of the parties are based on her personal knowledge and rational perceptions and are helpful to the jury. The Rules require nothing more for admission of the testimony. *John Hancock*, 585 F.2d at 1294.

Appellant's argument relates to the weight to which the evidence is entitled and not to its admissibility. Rule 701 contemplates that such weaknesses in the testimony be elicited and emphasized through cross-examination. (See Notes of Advisory Committee on Proposed Rules.)

■ Appellant also argues that Leatherman's opinion testimony should not have

---

**2.** The rationale for its admissibility is aptly summarized by Dean Wigmore:

> The argument has been made that, because we cannot directly see, hear, or feel the state of another person's mind, therefore testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.
>
> 2 J. Wigmore, Wigmore on Evidence, § 661 at 773–74 (3d ed. 1940).

been admitted because it related to a key issue in the case, i. e., the motivation of the defendant. Rule 704, however, permits opinion testimony on ultimate issues, so exclusion was not required. Additionally, the special verdict form utilized in this case did not require a finding that the defendant's actions were motivated by racial prejudice, but merely that they were wanton and malicious. As noted in the district judge's post-trial order, there was ample evidence from which the jury could have found malice.

In summary, the appellant has failed to demonstrate a clear abuse of discretion by the district judge. The testimony was technically admissible under the Rules of Evidence, and the appellant has not shown that the circumstances of the case compelled its exclusion.

Appellant argues that the district judge erred by admitting evidence that he had been investigated by the District Attorney's Office as a result of this incident. The district judge indicated in the post-trial order that the evidence was admitted under Rule 404(b) for the limited purpose of showing the defendant's motive for zealously investigating the plaintiff. At the time the evidence was initially admitted, a limiting instruction to that effect was given to the jury (tr. p. 528). Additionally, the court informed the jury that the defendant was not charged as a result of the District Attorney's investigation. The plaintiff's argument was that the defendant had maliciously pursued his investigation of the plaintiff (and engaged in certain misconduct regarding the evidence) in order to justify the arrest to the District Attorney's Office and not because he had a good faith belief in the plaintiff's guilt. The appellant now argues that the evidence was not probative of the defendant's motive and therefore inadmissible under Rule 404(b), and alternatively that it should have been excluded under the balancing test of Rule 403.

■ Appellant argues that the evidence of the District Attorney's investigation was not probative of his motivation because he testified that he was not aware of it at the time the allegedly malicious acts occurred. However, the date upon which he became aware of the investigation was in dispute and the jury was free to disbelieve his testimony. Rule 404(b) does not require the finding of any facts as a predicate to admissibility and therefore this argument relates to the weight to be accorded the evidence and not to its admissibility.

■ Appellant also argues that evidence of the investigation should have been excluded under Rule 403 because it created an unduly prejudicial inference that the defendant's actions were improper.[3] To prevail on this point, the appellant must demonstrate an abuse of discretion by the trial court. As noted previously, this is a difficult burden to bear.

The appellant relies heavily on *United States v. Cook*, 557 F.2d 1149 (5th Cir. 1977). In *Cook*, a criminal mail fraud case, the government introduced into evidence a document entitled "Stipulation and Consent to Order of Preliminary Injunction," which had been signed by two of the defendants in a previous SEC civil case. Although the stipulation contained no admissions of wrongdoing by the defendants, attached to the document was a long list of acts prohibited by the order. The government argued that the evidence was admissible under Rule 404(b) for certain limited purposes. The trial court admitted the evidence, but the Fifth Circuit reversed (as to one defendant), holding that the document should have been excluded under the balancing test of Rule 403.

The distinctions between *Cook* and the instant case are numerous. In *Cook*, the evidence reflected not only a previous investigation of the defendants, but the filing of charges against them as well. Although the stipulation did not admit any wrongdo-

---

**3.** In the context of this argument appellant suggests that the evidence should not have been characterized as evidence of bad acts under Rule 404(b). Whether the evidence is classified in that manner or simply as relevant evidence admissible for a limited purpose does not affect the analysis under Rule 403 and therefore need not be addressed.

ing, the contents of the document contained a strong implication of improper conduct. Thus, the evidence had a strong possibility of creating an impermissible inference in the minds of the jury. Furthermore, the court concluded that the evidence had little or no probative value in the case, and to the extent that it had any, was merely cumulative, *Cook*, 557 F.2d at 1153.

In the case *sub judice* the evidence of the investigation had significant probative value. To prove his case, the plaintiff had to show not only that the defendant did not act in good faith, but that his actions were wanton and malicious as well. The evidence of the investigation was probative of both these issues. In contrast to *Cook*, there is no suggestion here that the evidence was cumulative. Additionally, the evidence in this case only revealed that the defendant had been investigated, and the jury was informed that he had not been charged. In summary, the balancing test in *Cook* involved evidence that had minimal probative value, was cumulative, and had a great potential for unfair prejudice. However, in the instant case the evidence was extremely probative (if not crucial) and had a lesser potential for creating an impermissible inference in the minds of the jury.[4]

Furthermore, there is an additional reason why the evidence was properly admitted. The investigation of the defendant by the District Attorney's Office commenced within one week of the plaintiff's arrest and proceeded concurrently with the plaintiff's criminal case. It involved the same parties and witnesses, and was an integral part of the circumstances of plaintiff's arrest and prosecution. To have excluded this evidence entirely would have resulted in an incomplete presentation of the facts to the jury, see *United States v. Wall*, 225 F.2d 905, 907 (7th Cir. 1955); *United States v.*

*Miller*, 508 F.2d 444, 448 (7th Cir. 1974).[5]  In conclusion, the appellant has failed to demonstrate an abuse of discretion by the district judge in admitting this evidence.

■ Appellant also claims error in the district judge's failure to grant a mistrial when plaintiff's counsel allegedly violated the court's rulings on certain evidentiary matters. As noted in *Curtis v. Greenstein Trucking Company*, 397 F.2d 483, 486 (7th Cir. 1968), the trial judge is in a much better position than this court to determine the necessity of granting a new trial because of alleged improprieties on the part of counsel. It should be noted that this is not a case in which the attorney's conduct resulted in the revelation to the jury of evidence otherwise excluded. The evidence involved was the fact that the defendant had been investigated by the District Attorney's Office. The alleged misconduct consisted of plaintiff's counsel's apparent attempt to utilize that evidence in an impermissible fashion, i. e., as reputation or character evidence. Therefore, while we do not condone counsel's conduct, it appears unlikely that it resulted in such prejudice to the defendant as would justify a new trial.

■ Finally, the appellant challenges the damage award as being excessive. The district judge addressed this issue in the post trial order:

> This Court does not find the amount of the award excessive. When one considers that the plaintiff spent sixteen hours in jail, spent months contesting a pandering charge, and suffered the stigma of being branded a pimp and the embarrassment of having to deny that he attempted to sell his girl friend's sexual favors, the amount awarded in actual damages seems well justified. The amount awarded in

4. It is ironic that the appellant would raise this argument in light of the plaintiff having been stigmatized by the defendant in this case with not only a criminal investigation but a criminal charge as well. While this is not fatal to appellant's argument, it does suggest that the jury would have been less likely, in this case, to draw an impermissible inference from the mere fact of an investigation.

5. These cases were decided under the precursor to Rule 404(b) which included as an integral part of the analysis the balancing test now articulated in Rule 403, see *United States v. Jones*, 438 F.2d 461, 465 (7th Cir. 1971).

punitive damages is justified by the testimony concerning the defendant's substantial net worth.

We agree with the conclusion of the district judge.

For the reasons set forth herein, we conclude the judgment of the district court should be affirmed.