**UNITED STATES of America, Appellee,**

v.

**Russell L. NESS, Appellant.**

No. 81–1218.

United States Court of Appeals, Eighth Circuit.

Submitted June 19, 1981.

Decided Dec. 8, 1981.

Rehearing and Rehearing En Banc Denied Dec. 30, 1981.

David V. Vrooman, argued, Sioux Falls, S. D., William R. Glaeser, Waconia, Minn., for appellant.

Terry L. Pechota, U. S. Atty. for South Dakota, Bonnie P. Ulrich, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before HENLEY and McMILLIAN, Circuit Judges, and COLLINSON,* Senior District Judge.

COLLINSON, Senior District Judge.

The appellant, Russell L. Ness, appeals from a conviction by a United States District Court jury of ten (10) counts of misapplication of bank funds, all in violation of Title 18, U.S.C. § 656. The trial court [1] suspended imposition of sentence and Ness was placed on probation for two (2) years on each count, ordered to pay a fine of $300 on each count and a special condition of probation was imposed requiring him to perform 100 hours of community service work under the supervision of a probation officer. We affirm the conviction.

Appellant was the vice-president and manager of the Mobridge, South Dakota branch of the First National Bank of Aberdeen, South Dakota. From January of 1977 until October of 1977, he covered insufficient funds checks drawn on the account of a corporate depositor, The Mardian Co., Inc., (Mardian) by means of a dubious procedure known as "check-rolling."

Before checks presented at appellant's bank could be paid, they first had to be processed through the proofing section of the bookkeeping department. During this "proofing" process, a check would be identified and authenticated as to payor, account, and amount. The date it cleared the bank for payment would be noted on the back of each check. Once proofing had been completed, the checks would be distributed for "posting" to the various accounts upon which they were drawn. Checks could not be posted, however, where there were insufficient funds in their respective accounts. Once a determination of insufficiency was made, the checks were "kicked out" for special processing and the normal procedure was to return them to the payee, or obtain the approval of a bank officer to create an overdraft on the account, or place them in a separate account called "cash items" where the bank would hold them until paid or charged off. Such a standard procedure was not followed with respect to Mardian checks.

Whenever a Mardian check could not be posted due to insufficiency, appellant personally directed that it should be paid. The check was then "rolled" back through the proofing and posting process without being returned to the payee. No overdraft was created and the check was not placed in a "cash item" account. The result of this rolling procedure was that the general funds of the bank paid the check and the Mardian account was not debited in the amount of the check. The sum of all the checks rolled from January of 1977 until October of 1977 totaled over two million dollars.

Appellant apparently never disclosed his "check-rolling" practice to his superiors. An audit, conducted in October of 1977, finally revealed this irregular practice and led to his subsequent indictment and conviction of misapplication of bank funds. Check-rolling violated bank policy and was acknowledged by Ness as an improper banking practice.

Appellant's first contention on appeal is that four (4) of his co-workers should have been allowed by the trial court to testify that he never had any intent to injure or defraud the bank. Intent to defraud or injure the bank is an essential element of the crime of misapplication of bank funds. *United States v. Farrell*, 609 F.2d 816 (5th Cir. 1980); *United States v. Beran*, 546 F.2d 1316 (8th Cir. 1976), *cert. denied*, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1976). Appellant maintains that Federal Rules of Evidence 701 and 704 allow lay witnesses to testify, based upon their perceptions and observations, that Ness never intended to injure or defraud the bank.

In *United States v. McClintic*, 570 F.2d 685, at 690 (8th Cir. 1978), we held that:

---

* The Honorable William R. Collinson, Senior District Judge, Eastern and Western Districts of Missouri, sitting by designation.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, Northern Division.

Rule 701 of the Federal Rules of Evidence limits the opinion of a lay witness to those opinions or inferences which are (a) rationally based on the perception of a witness and (b) helpful to the clear understanding of his testimony or the determination of the fact at issue.

Moreover, "the decision as to the admissibility is within the sound discretion of the trial judge and the issues involved are peculiarly suited to his determination." *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir. 1981). There must be a clear abuse of discretion to justify reversal of the trial court's decision. *Id.*

Gordon McQuillen, Rose Espland, Valynn Burnette and Jerry Ross, all employees of appellant's bank, testified as to their professional dealings with appellant Ness and about his handling of the Mardian account. Defense counsel sought to elicit a response from each as to whether or not, based upon their respective observations and contact with Ness, he had any intent to "hurt," injure or defraud the bank.

 In such a circumstance, where the opinion proffered necessarily encompasses a legal conclusion, a trial court may very properly conclude that a response would not be helpful to the trier of fact. *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980). See also *United States v. Southers*, 583 F.2d 1302, 1306 (5th Cir. 1978). The danger here is that the jury could easily accord too much weight to the pronouncement of a lay witness unfamiliar with the standards erected by the criminal law, whose statement may be charged with the emotionalism of a person coming to the rescue of an embattled co-worker. Defense counsel had an adequate opportunity to elicit testimony from each witness about appellant's conduct at the bank. The only restriction placed upon counsel was that he could not, in effect, ask the witness to draw a legal conclusion from his own testimony. We find no abuse of discretion here.

Federal Rule of Evidence 704 permits testimony in the form of an opinion or infer-

ence otherwise admissible on the ultimate issue in a particular piece of litigation. This rule has the effect of eliminating the "ultimate issue objection" which previously prevented the expression of such opinions by witnesses. The language of the rule, however, only permits such expression of inference or opinion where they would be "otherwise admissible." Since the district court was within its sound discretion to exclude the opinions of appellant's co-workers about his lack of intent to injure or defraud the bank, they are not, then, "otherwise admissible" and thus go unsanctioned by Rule 704.

The appellant further maintains on appeal that he was denied an opportunity to present documentary and testimonial evidence to the effect that he obtained security for the rolled checks. Ness protests that he should have been allowed to put into evidence a $250,000 note that demonstrated that Mardian's debt was reduced by $50,000 during the check-rolling episode. Appellant also maintains that the district court erred in refusing to allow witness Gordon McQuillen to testify that overdraft charges were collected daily on the rolled checks and that there was sufficient collateral to back them. He finds error, also, in the Court's refusal to allow Jo McQuillen, Mardian's bookkeeper, to testify that collateral was actually purchased with the rolled checks. Moreover, Valynn Burnette was not allowed to testify as to specific contents of the Mardian loan file. Appellant contends that the fact that the loan file contained notes, inventory lists and security agreements securing the rolled checks negates his intent to injure or defraud the bank.

 We feel that the district court properly refused to admit this evidence pursuant to Federal Rule of Evidence 403.[2] In *United States v. Tidwell*, 559 F.2d 262, 266 (5th Cir. 1977), *rehearing denied*, 564 F.2d 98, *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978), the court held that

2. Federal Rule of Evidence 403 allows the court to exclude evidence which would tend to con-

fuse or mislead the jury or which would be cumulative.

[t]he ultimate or future possibility or probability of benefit to the bank is not a defense to a misapplication of funds ... *The offense occurred and was complete when the misapplication took place* (emphasis added). What might have later happened as to repayment is not material and could not be a defense.

It appears to this Court that to a large extent, the appellant attempts to improperly characterize his check-rolling practice as conventional loan making, for it is only in this context that any reduction in Mardian's outstanding debt, security agreements, amounts of collateral and the contents of the Mardian loan file become relevant. Such a characterization is wholly misleading and diverts attention from the crime for which he was charged. Appellant proceeded upon a course unknown and unsanctioned by the bank's officers. He personally directed that the bad checks be honored out of the general funds of the bank. It is irrelevant that he sought to denominate the funds expended to cover the checks as "loans" or that he subsequently sought to collateralize them. The fact that overdraft charges may or may not have been collected is irrelevant because the *checks themselves* were never debited to the Mardian account. The crime was a fait accompli at the moment the funds were improperly diverted to cover the "rolled" checks. Introduction of this aforementioned evidence could very possibly have misled the jury and confused the issues in this case.

For the foregoing reasons, we find that appellant received a fair trial and that no grounds exist to set aside his conviction for misappropriation of bank funds.

Affirmed.