**Ginger A. DORITY, Plaintiff–Appellant,**

v.

**CITY OF CHICAGO, Defendant–Appellee.**

No. 01–3855.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 5, 2002.

Decided Oct. 9, 2002.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

### ORDER

The plaintiff, a black woman by the name of Ginger A. Dority, worked for the City of Chicago's Bureau of Bridge and Transport as a Foreman of Painters. She filed this action against the defendant on August 7, 1998, and later filed an amended complaint on June 14, 1999. The complaint consists of three counts: Firstly, a sex discrimination claim brought under Title VII; Secondly, a race discrimination claim pursuant to Title VII. Thirdly, a retaliation claim under § 1981. On July 20, 1999, and in response to the defendant's motion, the district court dismissed the third count alleging retaliation. On September 29, 2000, the defendant filed a motion for summary judgment on Counts I and II, and also the City asked the court to strike certain submissions. On September 28, 2001, the district court granted the City's motion to strike in part, and also granted the City's motion for summary judgment. We are asked to consider whether certain evidentiary and procedural rulings are grounds for reversal, and whether the district court erred in granting summary judgment against the plaintiff. We affirm.

In the summer of 1996, the plaintiff began complaining to her supervisor's superior that her supervisor was treating her differently than her colleagues. On April 25, 1997, the plaintiff's supervisor issued a written reprimand alleging that the plaintiff and her crew were found to have left a job site without the requisite permission. In response, the plaintiff filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Opportunity Commission ("EEOC") on May 12, 1997. She stated that the reprimand was an act of race/sex discrimination. Pursuant to this charge, the IDHR held a fact-finding conference on August 21, 1997.

After her supervisor received a complaint, the plaintiff was the subject of yet another disciplinary hearing on August 25, 1997. While working near the Art Institute in Chicago, the plaintiff's crew accidentally sprayed paint on both the Institute's facade and several cars parked nearby. The City paid $2,540.76 to repair the damage, and after finding that she had failed to take the appropriate precautions, the plaintiff's superior suspended her for three days. He also suspended the supervisor who was responsible for the plaintiff.

On August 28, 1997, the plaintiff filed a second IDHR/EEOC charge. She alleged that her suspension was actually retaliation for the first charge that she filed. On September 28, 1998, the plaintiff filed a third charge with the IDHR/EEOC, alleging that the City of Chicago had retaliated and discriminated against her vis-a-vis a wide array of unfavorable employment conditions. The plaintiff claimed that her supervisor failed to give her the equipment and materials she needed, that he assigned less competent workers to her crew, and

that her crew was often smaller than what she needed to complete her assignments. She also claimed that she was inappropriately denied the use of a City vehicle, and that she was being unfairly treated in the assignment of overtime. Even after her supervisor was replaced, she alleged that his replacement also assigned her overtime in an unfair manner. She believed that she was treated differently because of her race and gender.

Although the plaintiff's overtime hours were, in fact, less than some of her colleagues, the plaintiff declined overtime opportunities that she had been offered. On occasion, she refused to accept certain overtime assignments because she felt that they were somehow unacceptable. On September 4, 1997 the plaintiff wrote a letter to her supervisors stating that she was refusing to work overtime until further notice.

Initially, the plaintiff argues that the district court committed reversible error when it ruled prematurely on a pre-trial motion, denying her request for a protective order before the deadline for her reply had passed. (Pl.Br.20–21). However, after the plaintiff pointed out the oversight, the court subsequently granted the plaintiff's amended motion for reconsideration and allowed the plaintiff to file a reply. (Pl.Br.22). In that reply, the plaintiff argued that the court should prohibit the administration of psychological tests. Addressing the arguments that the plaintiff made in her reply, the court again denied the protective order.

We review the district court's ruling on a discovery dispute for an abuse of discretion. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir.2002). Discovery decisions are entitled to substantial deference, because the trial court is in the best position to make decisions regarding the appropriate scope of discovery. Accordingly, "we will not find that a district

court abused its discretion unless one or more of the following circumstances is present: (1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir.1996). In addition, we will only reverse a district court's discovery decision when the decision results in "actual and substantial prejudice to the complaining litigant." *Patterson*, 281 F.3d at 679; *quoting Jurcev v. Central Cmty. Hosp.*, 7 F.3d 618, 627 (7th Cir.1993).

■ Even though the district court issued its initial ruling in error, the judge did reconsider and granted the plaintiff's motion to allow her a chance to respond when he became aware that a mistake had been made. The court considered the subsequent response and addressed the plaintiff's arguments. Moreover, the psychological testing allowed by the court did not pertain to a substantive element of the case. On the contrary, the court determined that the results of a psychological examination are relevant to the calculation of damages. The ruling on this matter did not affect the court's subsequent summary judgment. Thus, in light of the fact that "district courts have broad discretion in matters relating to discovery," *Dole v. Local 1942 Int'l. Broth. of Elec. Workers, AFL–CIO*, 870 F.2d 368, 371 (7th Cir.1989) the court's premature ruling—which was quickly remedied—did not constitute reversible error.

Second, the plaintiff argues that the trial court committed reversible error when it refused to allow the plaintiff to file a belated reply to the defendant's motion to strike. However, "district court judges, because of the very nature of the duties

and responsibilities accompanying their position, possess great authority to manage their caseload." *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1030 (7th Cir.1998) (citing *United States v. Reed*, 2 F.3d 1441 (7th Cir.1993)) (1994). As a result, this court reviews only for abuse of discretion the district court's refusal to grant the plaintiff an extension. *Id.* (citing *Smith v. Severn*, 129 F.3d 419 (7th Cir.1997)) ("district court did not abuse its discretion in vacating magistrate judge's order allowing plaintiff leave to file belated response"); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996) ("judge has a right to expect that deadlines will be honored"). We will disturb the district court's decision "only when it is apparent the judge has acted unreasonably." *Id.; citing Brooks v. United States*, 64 F.3d 251, 267–57 (7th Cir.1995); *United States v. Hamm*, 786 F.2d 804, 806–07 (7th Cir.1986) ("A trial court has discretion and a reviewing court may disturb the trial court's decision only for clear error").

■ In this case, the judge advised the parties that "[n]o extension will be granted," prior to the plaintiff requesting an extension (Def.Br.24). The court had previously extended the deadline for the plaintiff's reply brief, and the court advised plaintiff's counsel of the new deadline through the mail. (Def.Br.25). The court gave the defendant one month, more than adequate time, to file her brief. But the plaintiff waited until the day before the deadline to ask for an extension. Under these circumstances, it is difficult to understand how the plaintiff can allege that the district court conducted itself unreasonably. We decline to conclude that the judge abused his discretion.

Third, we move to the district court's decision to exclude certain pieces of evidence. Specifically, the plaintiff argues that the district court erred in excluding three items of evidence offered in response to the defendant's motion for summary judgment. This evidence includes: (1) Exhibit 42, an IDHR investigation report; (2) Exhibits 27 and 28, the City of Chicago's overtime records for 1997 and 1998; and (3) Exhibits 30, 31 and 50, the abstracts of the City's overtime records for 1997—1999. (Def.Br.29). We point out that the court is entrusted with a great deal of discretion when ruling on receipt of evidence at trial. *See Littlefield v. McGuffey*, 954 F.2d 1337, 1342 (7th Cir.1992); *See also Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981); *See also Wheeler v. Sims*, 951 F.2d 796, 801–02 (7th Cir.1992); *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981).

With regard to Exhibit 42, the record is clear that the IDHR conducted an investigation and issued a report on the reprimand that the plaintiff received. The report concluded that the reprimand was based on race and/or gender discrimination. While the court did admit portions of the report for purposes of party-opponent admissions and impeachment, it did exclude the report's conclusions, which labeled the reprimand as an act of discrimination. The court, in its exercise of discretion, determined that the prejudicial effect of such evidence outweighed its probative value.

The trial judge also excluded exhibits 27 and 28, because these exhibits were neither filed with the court nor served on the defendant. Even though the plaintiff obtained these documents from the defendant, that does not change the fact that the plaintiff—the party opposing the motion for summary judgment—had a duty under FRCP 56(e) to provide the court as well as her opponent with evidence supporting her position. Moreover, the defendant supplied the court with overtime records for the same years as exhibits 27 and 28, and thus the court was not deprived of this information despite the defendant's

lapse. But even if the evidence were missing altogether, that would not have changed the ultimate disposition of this case.

The court declined to admit exhibits 30, 31, and 50, which were said to be summaries of the Department of Transportation's overtime records from 1997 to 1999. The court stated that the documents appeared to be summaries of overtime earnings for certain employees, which were produced on a word processor and "generated in connection with [the defendant's] instant litigation against the City." (Def.Br.37). The court found that the plaintiff failed to lay a proper foundation for the admission of these documents nor to properly authenticate them in accord with the federal rules of evidence. But even if they had been admitted, the documents would only serve to demonstrate that the plaintiff earned less overtime than some of her colleagues. That fact, even if properly submitted to the court, these documents would not have risen to the level of constituting or creating a genuine issue of material fact such that it would have warranted a trial.

It is well-established that we review the district court's "decision to strike parts of an affidavit in opposition to a motion for summary judgment for abuse of discretion." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir.2001); *quoting Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir.1998). In general, evidentiary rulings of this nature are afforded great deference. *See Littlefield v. McGuffey*, 954 F.2d 1337, 1342 (7th Cir. 1992); *See also Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981); *See also Wheeler v. Sims*, 951 F.2d 796, 801–02 (7th Cir.1992); *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981). In other words, "decisions 'that are reasonable, i.e., not arbitrary, will not be questioned.'" *Id., quoting Whitted v. General Motors*

*Corp.*, 58 F.3d 1200, 1203 (7th Cir.1998). And as we have made clear, "even if the district court "parsed the affidavits too aggressively, that error is harmless if the stricken evidence was insufficient to support a genuine issue of material fact for trial."" *Id., quoting Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998). Thus, we refuse to disturb the district court's decision in any one of these three areas of evidence, because even if the court had abused its discretion—which it did not—the evidence would not have affected the court's grant of summary judgment.

Fourth, we reject the plaintiff's claim that the trial court abused its discretion when disregarding certain portions of the plaintiff's Rule 56.1 Statement that did not comply with the local rules. As the district court explained, the plaintiff's "LR 56.1(b)(3)(A) responses to the City's statement of facts contains answers that are neither denials nor admissions...." And the plaintiff also failed "to provide specific references to the record as to each averment in the case of any disagreement...." The court ignored these statements that amounted to nothing more than mere assertions of additional fact made in violation of Rule 56.1.

We have repeatedly held that the trial judge is entitled to strictly enforce Local Rule 56.1. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994) (listing the cases in which we have "repeatedly upheld the strict enforcement" of regulations such as Local Rule 56.1). In fact, "the district court's interpretation of its own rules is, of course, due considerable deference from us." *Id.* at 923, n. 4, *citing Smith v. Village of Maywood*, 970 F.2d 397, 400 (7th Cir.1992) and *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990). Therefore, we see no reason to upset the district court's determination that the plaintiff failed to

comply with the applicable local rule and that this failure to comply warranted the subsequent refusal of the court to consider the improperly submitted evidence. The plaintiff's allegation that the district court did not explain precisely enough which portions of the reply were inadequate does not change the fact that the defendant was obligated to comply with the rule in the first place. Nor does it change the fact that, after the plaintiff failed to comply with the local rule, it was proper for the court to ignore the evidence so submitted. We will not reverse the district court's ruling in this regard.

Lastly, we move to consider the summary judgment motion that the district court granted on the plaintiff's claim of Title VII discrimination as well as her claim of retaliation. Because the plaintiff failed to present evidence of direct discriminatory intent, the district court considered the defendant's discrimination claim under the *McDonnell Douglas* burden shifting analysis. To demonstrate a *prima facie* case of employment discrimination under that analysis, the plaintiff must establish that: (1) She belongs to a protected class; (2) She performed her job satisfactorily; (3) She suffered an adverse employment action; and (4) Her employer treated similarly-situated employees outside of her protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *See also Lenoir v. Roll Coater Inc.*, 13 F.3d 1130, 1132 (7th Cir.1994). The court found that the plaintiff had sufficiently established the first three elements of the analysis, but that she had "not even made a colorable attempt to establish the final element, that her employer treated similarly situated employees outside of her class more favorably." In fact, the plaintiff failed to "provide the court with any facts regarding types of overtime opportunities that her fellow Foremen of Painters were offered." There was no way for the

district court to compare the number and type of opportunities offered to the plaintiff with the number and type of opportunities offered to the plaintiff's colleagues. But even if the plaintiff had provided these facts, the court found that she had not "advanced facts from which a reasonable jury could infer that the nondiscriminatory reasons the City puts forth regarding her overtime opportunities... are pretextual." The defendant thus failed to raise a genuine issue of material fact.

We review *de novo* the district court's grant of summary judgment. According to Rule 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.*, at 322, 106 S.Ct. 2548. A genuine issue of material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the granting of summary judgment serves a clear and important purpose, and it "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.*, at 327, 106 S.Ct. 2548.

An element essential to this plaintiff's case was the fourth factor under the

*McDonnell Douglas* burden-shifting analysis. If the case had gone to trial, she very well may have been required to demonstrate that her employer treated similarly-situated employees outside of her protected class more favorably. Yet after discovery, and in the face of her opponent's motion for summary judgment, the plaintiff was clearly unable to provide any evidence on this point. As the district court said, the plaintiff did not even attempt to demonstrate the fourth factor. Accordingly, we affirm the district court's summary judgment on the Title VII discrimination claim.

The plaintiff also argued that the three-day suspension, imposed on both her and another white male supervisor, were really in retaliation for her filing the May 12, 1997 IDHR/EEOC charge. After receiving complaints, the plaintiff's superior explained that the disciplinary action was imposed for "failing to take the proper steps to control work and for causing overspray and damage to private vehicles and property at the Art Institute of Chicago." The only evidence the plaintiff provided to establish that this was an act in retaliation is the temporal proximity between the fact-finding conference and her suspension. But this court has already made it clear that temporal proximity, in and of itself, is not enough to establish a triable issue. *See Stone v. City of Indianapolis Public Utilities*, 281 F.3d 640 (7th Cir.2002) (collecting cases holding that temporal proximity is rarely sufficient to establish a triable issue). Although the plaintiff established that the IDHR/EEOC charge preceded her suspension, she failed to show any causal connection between the

two events, and therefore failed to show that she was treated adversely because she engaged in a protected activity. Furthermore, she also failed to make out a *prima facie* case for retaliation, because she did not demonstrate that she, unlike similarly-situated colleagues, was subjected to an adverse employment action even though she performed her job satisfactorily. There is no evidence in the record that would even suggest that the suspension was precipitated by a discriminatory cause. We decline to disturb the lower court's grant of summary judgment on the retaliation claim.

We AFFIRM the judgment of the District Court.