M. SMITH, Circuit Judge,
dissenting:
I respectfully dissent. I would uphold the district court’s admission of the SEC’s Complaint, under Rule 404(b), because the Complaint showed that Bailey knew that he had been previously sued for issuing unregistered securities, in violation of SEC Rule S-8. Because the Complaint was admitted for the purpose of showing Bailey’s knowledge, it is not, as the majority contends, necessary that the Complaint, in and of itself, be “sufficient to support a finding that Bailey committed the act charged [therein].” Bailey’s knowledge of Rule S-8 was conditioned upon the fact that he had been named as a defendant in the prior Complaint, not whether he actually committed the acts alleged therein. Accordingly, I would hold that the district court did not err, let alone abuse its discretion, in admitting the Complaint as evidence, under Rule 404(b).
Because I would find that the evidence was properly admitted under Rule 404(b), I believe that the majority should have applied a Rule 403(b) balancing analysis to determine whether the probative value of the Complaint was substantially out *806 weighed by its prejudicial effect. Nonetheless, even assuming error, as did the majority, I would hold that such error was harmless in light of the abundance of evidence admitted concerning the series of highly suspicious transactions between Bailey and Owens involving unregistered S-8 stock.
I. Rule 404(b)
We review the district court’s decision to admit evidence under Rule 404(b) for an abuse of discretion. United States v. Khan, 993 F.2d 1368, 1376 (9th Cir.1993). Federal Rule of Evidence 404(b) provides that “evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” Fed.R.Evid. 404(b). However, such evidence may be introduced for “other purposes,” including intent, knowledge, notice, and absence of mistake or accident. Id. Evidence of other acts may be admitted if:
(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.
United States v. Flores-Bianco, 623 F.3d 912, 919 (9th Cir.2010) (emphasis added.).
Rule 404(b) has thus long been characterized as “a rule of inclusion — not exclusion.” United States v. Cherer, 513 F.3d 1150, 1157 (9th Cir.2008). Indeed “[u]n-less the evidence of other acts only tends to prove propensity, it is admissible.” United States v. Castillo, 181 F.3d 1129, 1134 (9th Cir.1999) (emphasis added). We have also repeatedly emphasized the “low threshold” for finding Rule 404(b) evidence to be “sufficient proof’ of a prior act. See, e.g., United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990); United States v. Romero, 282 F.3d 683, 688. Thus, Rule 404(b) “is not so much a character rule as a special aspect of relevance because it does not prohibit character evidence generally, only that which lacks any purpose but proving character.” United States v. Douglas, 482 F.3d 591 (D.C.Cir.2007) (emphasis added).
It is true that the Supreme Court, in Huddleston, cautioned against reading the sufficiency of evidence of requirement under Rule 404(b) as carte blanche for the Government to introduce “a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo.” Huddleston v. United States, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). However, the Court clarified, in Huddleston, that the sufficiency requirement of Rule 404(b) was tied to the relevancy requirements of Rule 402 and 104, explaining: “Evidence is admissible under Rule 404(b) only if it is relevant. ‘Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.’ ” Id. (citing Fed.R.Evid. 401, advisory committee’s notes, 688) (emphasis added); id. at 690, 691, 108 S.Ct. 1496.
The majority reasons that the district court abused its discretion in admitting the Complaint because a complaint “is merely an accusation of conduct and not of course, proof that the conduct alleged occurred.” As an initial matter, the majority cites no authority for the proposition that a civil complaint is insufficient proof of conduct. Instead, it devotes a significant portion of its discussion to whether documents arising out of settlements, in which the defendant neither admitted nor denied the findings therein, could be admitted under Rule 404(b). The majority relies upon a Fifth *807 Circuit case from 1977, United States v. Cook, 557 F.2d 1149 (5th Cir.1977) and an unpublished bankruptcy case from the Southern District of New York, In re Adler, Coleman Clearing Corp., No. 95-08203/JLG, 1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3, 1998), to conclude that a complaint is inadmissible proof of prior bad acts when the case is subséquently settled with no admission of guilt. Cook is completely inapposite, and involved the admissibility of injunctive relief to prove the scheme, motive, and knowledge of the defendant. 557 F.2d at 1152. Nowhere in Cook did the court examine the potential admissibility of a prior civil complaint. ■ In re Adler is equally unhelpful to the majority’s position; there, the court rejected the admissibility of an SEC Administrative Release, a type of agency news document,. which reported' and described the proceedings and settlement of an earlier' SEC case, under Rule 404(b). 1998 WL 160036, at *8. And notably, while the court deciding In re Adler rejected the admissibility of the SEC Administrative Release, it held that a prior grand jury indictment was admissible under Rule 404(b), further undercutting the majority’s argument that charging documents such as a complaint or an indictment, are insufficient evidence of prior acts. Id. at *4, *8. Ultimately, however, the majority’s discussion of settlement evidence is a red herring because whether Bailey accepted or denied responsibility in the settlement is not at issue in this case, and was not raised on appeal. Moreover, the settlement agreement was not offered as evidence, and whether Bailey accepted liability in the previous suit does not bear on whether the suit informed Bailey’s knowledge of Rule S-8 regulations.
The Government proffered the Complaint as evidence of Bailey’s knowledge of Rule S-8’s prohibition on trading in unregistered stock. Thus, the crux of this appeal turns on whether the Complaint constituted sufficient evidence, under Huddleston and its progeny, of a prior act that would have apprised Bailey of the pertinent prohibitions and requirements of Rule S-8. Contrary to the majority’s contentions, I would hold that it is not necessary that the allegations in the Complaint be true in order for the previous suit to have informed Bailey of Rule S-8’s requirements.
Under Huddleston, “[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.” 485 U.S. at 690, 108 S.Ct. 1496.[1] Here, evidence was relevant insofar as it bore upon Bailey’s knowledge of Rule S-8. The conditional fact upon which the Complaint was proffered was that Bailey knew that the prior Complaint accused him of knowingly violating Rule S-8. Thus, the “prior act” at issue under the third prong of Rule 404(b) was not that Bailey committed the acts alleged in the Complaint, but the fact and extent of Bailey’s knowledge of the Rule S-8 claims, as alleged in the Complaint. The Complaint need only be sufficient evidence of Bailey’s knowledge of his involvement in the civil suit — not the veracity of the claims against him — in order for it to be admissible.
The majority maintains that the government “concedefd]” that the Complaint was offered to prove intent. This is simply incorrect. The government’s response brief explains that the Complaint was offered to prove the knowledge component of willfulness, as defined under 15 U.S.C. §§ 77e, *808 77x.[2], The transcript from the court’s ruling on Bailey’s motion in limine proves that the government offered the Complaint for the purpose of establishing the “knowing”' element of willfulness: “One way I intend to show [willfulness] is the fact that they were sued by the federal securities regulators in 2003 knowing that this- is perceived to be wrongful, knowing that it is perceived to.be serious enough to merit federal action.” (emphases added). Indeed, it was Bailey’s counsel who conceded that it believed the government’s argument was that the Complaint showed “that the defendants knew that someone from the SEC could file such a complaint.... ” (emphasis added). The court’s ruling on the motion in limine further confirms that, “without getting any deeper into it,” the Complaint was offered only for the legitimate purpose of proving Bailey’s knowledge: “... we are simply going to introduce this for the purpose of showing that he certainly knew what he was doing, that it was illegal.” Thus, the majority incorrectly conflates the concepts of intent and knowledge to argue that the Complaint was used essentially as propensity evidence. In reality, the statements of the government, defense counsel and the court expressly demonstrate that the Complaint was offered for the purpose of proving Bailey’s knowledge.'''
Indeed, it is the majority who concedes: “All a complaint establishes is knowledge of what a plaintiff claims.” This is exactly the point. The Complaint stated the precise code sections of Securities Act at issue, and literally quoted the duties imposed by Rule S-8:
The Instructions to Commission Form S-8 state that Form S-8 is available to register securities offered and sold to the Issuer’s consultants and employees ‘only if (i) they are natural persons; (ii) they provide bona fide services to the registrant; and (in) the services are not in connection with the offer or sale of securities in a capital raising transaction, and do not directly or indirectly promote or maintain a market for the registrant’s securities ... ’
Likewise the Complaint expressly identified the.specific actions that violated Rule S-8: “... the issuers either obtained little or no bona fide services in exchange for the stock, or issued the stock in connection with a capital-raising transaction.” Thus, contrary to the majority’s representations, not only did the Complaint specifically state the duties imposed by law under Rule S-8, but also the very type of conduct that would violate it. This alone should constitute a sufficient basis to affirm the district court’s discretion in admitting the Complaint.
We have repeatedly held under Huddleston that Rule 404(b) is an inclusive rule designed to permit the admissibility of pri- or act evidence when it is offered for any other legitimate basis than to prove propensity. See generally Cherer, 513 F.3d at 1157. Rule. 404(b) admissibility reflects the court’s acknowledgment that “[ejxtrinsic acts evidence may be critical to the establishment of a truth as to a disputed issue, especially when that issue involves the actor’s state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.” Huddleston, 485 U.S. at 685, 108 S.Ct. 1496. Since Bailey confirmed his knowledge and awareness of the SEC Rule S-8 *809 suit against Mm during his deposition, the Complaint constituted sufficient evidence of the prior act (that Bailey was previously sued by the SEC for trading in unregistered securities) and the conditional fact of the Complaint’s relevance (Bailey’s knowledge). Accordingly, I would hold the district court did not err, let alone abuse its discretion, in admitting the Complaint under Rule 404(b).
II. Rule 403(b)
We review the district court’s balancing analysis under Rule 403(b) for an abuse of discretion standard. United States v. Khan, 993 F.2d 1368, 1376 (9th Cir.1993). “Once it has' been established that the evidence offered serves one of the [404(b)] purposes, the ... ‘only’ conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.” United States v. Curtin, 489 F.3d 935, 944 (9th Cir.2007). Limiting instructions are generally sufficient to cure any prospective prejudicial impact. See Dubria v. Smith, 224 F.3d 995, 1002 (9th Cir.2000).
To prove its case, the Government was required to establish that Bailey acted “willfully” in violating the registration provisions of the Securities Act of 1933. See 15 U.S.C. §§ 77e, 77x. We have held that willfulness may be proven under securities laws by showing that a defendant “intern tionally undertook] an act that one kn[e]w[ ] to be wrongful.” United States v. Tarallo, 380 F.3d 1174, 1188 (9th Cir. 2004).
Here, the Complaint was highly probative of Bailey’s knowledge of federal securities laws. The Complaint not only apprised Bailey of Rule . S-8 generally; it expressly articulated the SEC’s prohibition against issuing S-8 stock except in return for bona fide services. The probativeness of the Complaint is highlighted by the fact that defense counsel repeatedly put Bailey’s intent at issue during the course of the trial, including statements to the jury such as, “Well, by definition, I haven’t gotten bona fide services, but did I commit a crime? I think not because it wasn’t wrongful. It wasn’t intentional, wrongful.” The Government thus used the Complaint, including the type of relief sought therein (permanent injunctive relief, disgorgement of ill-gotten gains, payment of civil money penalties, and officer-director bar), to show that Bailey was on notice concerning the requirements of Rule S-8, and specifically, that Bailey was aware of the bona fide services requirement for the issuance of S-8 stock.
Since the Complaint is highly probative of Bailey’s knowledge, we must next determine whether the risk of unfair prejudice, undue delay, and confusion of the issues substantially outweighs the probative value. Curtin, 489 F.3d at 944. It is clear to me that it does not, given the Court’s multiple limiting instructions to the parties and to the jury. The Court strictly limited the purposes for which the jury could consider the Complaint, both in verbal instructions to the parties and in its formal written instructions to the jury. Indeed, the district court expressly instructed that the evidence of unproven conduct may be considered “only for its bearing, if any, on the question of the defendant’s intent, plan, knowledge, absence of mistake, and absence of accident, and for no other purpose.” The district court specifically instructed the jury “not [to] consider this evidence as evidence of guilt of the crime for which-the defendants are now on trial.” Accordingly, I would hold that the district court did not abuse its discretion in admitting the prior act evidence under Rule 403(b) because any prejudicial effect was *810 cured by the district court’s cautionary instructions to the jury. See Dubria, 224 F.3d at 1002 (“Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact.”) (internal citations omitted).
III. Harmless Error Analysis
Finally, even assuming error in admitting the Complaint, I would hold that any error was harmless given the overwhelming evidence against Bailey. We review erroneous evidentiary rulings with a presumption of prejudice which may be rebutted by “a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted.” Obrey v. Johnson, 400 F.3d 691, 701 (9th Cir.2005).
At trial, the Government presented the following evidence to prove that Bailey violated federal securities laws by issuing and selling shares to Owens in order to raise capital for the Aspen Cove and Pepper Lane ventures, and for Bailey’s personal gain:
• Physical Form S8 documents, Finance 500 documents and spreadsheets showing that Bailey issued over 1.1 billion shares ($600,000 value) to Owens without any consulting agreement for bona fide services, despite past similar deals.
• Monthly statements from Owens showing that upon receipt of those shares, Owens immediately sold them.
• Monthly statements showing that upon Owen’s payment for the sale of the shares, that rather than reinvesting the money personally, Owens transferred the money through a series of transactions, back to finance the acqui- ■ sition of Aspen Cove and Pepper Lane on Gateway’s behalf (and ultimately, Bailey).
• Testimony from Boschetto, a seller of the Utah property, who testified that he never met or negotiated with Owens, despite the alleged consultative agreement, and Owens provision of the funds for the sale.
• Gateway’s form 10-K showing that the company had acquired Aspen Cove " and Pepper Lane, but never once mentioning Owens’ role as a consultant.
• Documentary evidence that Owens was absent so frequently from Bailey’s real estate operations that Bailey assumed power of attorney for Owens when completing various real estate transactions.
• Prior “2002” Consulting Agreement” in which Owens had agreed to provide consulting services for earlier work with Bailey.
• Owen’s testimony, offering no exculpatory explanation for why he had no contract with Gateway, or Bailey, in the 2004 consulting transactions, or for why he had immediately funneled the stock sale money back to Gateway (despite the fact that this was purportedly his “compensation” for bona fide services rendered).
The majority discusses at length the plausible explanations proffered by Bailey for issuing the stock to Owens, and contends that the Government’s case was “built around a single witness with questionable motives.” The majority’s analysis ignores the ample record evidence above that proves the strength of the Government’s case. The majority opinion also fails to acknowledge, let alone refute, an abundance of documentary and demonstrative evidence introduced at trial' — particularly the unexplained transfers and recirculation of the original stock funds back into the Aspen Cove and Pepper Lane projects. The majority’s conclusion that the Government’s case “turned entirely on Owens’ testimony” and the Complaint *811 “could have tipped the jury in the government’s favor” [sic] is further undercut by the fact that the Complaint and Owens’ testimony bore upon completely different elements of the crime. Specifically, Owens’ testimony primarily concerned whether he provided bona fide services to Bailey, but the Complaint was narrowly offered for the purpose of proving that Bailey knew it was illegal to issue unregistered stock without receiving bona fide services in return.
The Government presented ample documentary, testimonial and demonstrative evidence, in addition to Owens’ testimony, showing that Bailey issued the unregistered for the purpose of generating funds for the Aspen Cove and Pepper Lane purchases. The evidence proving that series of events, as corroborated by Owens’ testimony, was unaffected by the state of mind issues raised by the Complaint. Thus, I would hold that it is more probable than not that the jury would have reached the same verdict had the Complaint not been introduced.
CONCLUSION
For the reasons indicated, I would affirm the district court’s admission of the Complaint, under Rule 404(b), and Bailey’s conviction.

. Huddleston rooted the relevancy requirement of Rule 404(b) in "Rule 402 — as enforced through Rule 104(b).” 485 U.S. at 691, 108 S.Ct. 1496.

. We have defined willfulness in the context of federal securities laws as “intentionally undertaking an act that one knows to be wrongful.” United States v. Tarallo, 380 F.3d 1174, 1188 (9th Cir.2004) (emphasis added). Thus, in order to prove the “willfulness” requirement of the registration provisions of- 15 U.S.C. §§ 77e, 77x, the government had to prove Bailey’s knowledge.