UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerome Fitzgerald ROWE, aka: Jerome Rowe, Defendant–Appellant.

No. 95–50224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1996.

Decided Aug. 12, 1996.

Pedro V. Castillo, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Bruce Riordan, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Appeal from the United States District Court for the Central District of California, J. Spencer Letts, District Judge, Presiding. D.C. No. CR–94–00041–JL(JR)–1.

Before: GIBSON,* NOONAN, and THOMPSON, Circuit Judges.

GIBSON, Circuit Judge:

Jerome Fitzgerald Rowe appeals a jury's verdict finding him guilty of committing carjacking in violation of 18 U.S.C. § 2119 (1994), and of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (1994). Rowe contends that the district court erroneously refused to suppress a confession that was allegedly procured from him as the result of an unreasonable delay between his arrest and arraignment. In addition, he claims that the district court abused its discretion when it limited his cross-examination of a key prosecution witness. Finding

---

* The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

that neither of these assertions merits reversal, we affirm.

## I. BACKGROUND

At approximately 3:30 a.m. on December 29, 1993, while Cynthia Wilson was stopped at a red light in Los Angeles, California, a man with a blue steel handgun approached the 1988 beige Ford Taurus that she was driving. The man displayed his weapon to Wilson and demanded the vehicle, and she promptly exited the car. Wilson observed the carjacker drive the Taurus, which she had borrowed from her employer, north on Redondo Avenue, and she then ran home to call the police.

Shortly thereafter, Los Angeles Police Department ("LAPD") Officers Watcheter and Bender noticed Rowe, who fit Wilson's description of the man who robbed her, operating the stolen vehicle. When the officers stopped Rowe, they saw a blue steel pistol on the passenger floorboard of the Taurus. The officers detained Rowe at the scene until Wilson arrived to participate in a "field show-up" of the suspect. Wilson positively identified Rowe at around 4:00 a.m., and the officers at that time placed him under arrest.

LAPD Officer Stuart Guidry transported Rowe to the department's Wilshire Station and booked him on the state charge of committing armed robbery of a motor vehicle. Rowe's case was temporarily set aside for review by a detective from the LAPD gang unit known as CRASH. A CRASH detective named James Freund arrived at the Wilshire Station at approximately 11:00 a.m., reviewed the police report, and determined that Rowe's case was appropriate for CRASH involvement. Based on a review of guidelines provided by the Federal Bureau of Investigation ("FBI"), however, the supervising detective at the station advised Freund that the FBI might be interested in the case. Detective Freund therefore informed FBI Special Agent Nunemaker of the carjacking incident. Agent Nunemaker, in turn, asked Freund to call Special Agent Virginia Curry.

Detective Freund initially spoke with Agent Curry at around noon on December 29. After learning from an Assistant United States Attorney that the case might fall within federal jurisdiction, Agent Curry contacted Freund at approximately 3:00 p.m. to inquire whether the local authorities would be willing to defer interrogating Rowe until she and another FBI agent had an opportunity to travel to the Wilshire Station. Freund agreed to wait, and Curry, accompanied by Special Agent Stanley Knotts, arrived at the station about one hour later.

Detective Freund, in the presence of the two FBI agents, began interviewing Rowe at roughly 4:15 p.m. Freund informed Rowe of his rights, which the suspect indicated he understood, and Rowe agreed to make a statement; Rowe subsequently admitted that he had "jacked" Wilson for the Ford Taurus. Detective Freund asked most, if not all, of the questions during the interrogation because, in the words of Agent Curry, "at that time it was his case." The interrogation concluded at approximately 4:40 p.m.

The next day, December 30, 1993, Agent Curry took Rowe into federal custody, and she immediately transported him to his arraignment before a federal magistrate. The United States later returned a two count indictment charging Rowe with committing carjacking in violation of 18 U.S.C. § 2119 (1994), and with using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (1994). Citing 18 U.S.C. § 3501(c) (1994), Rowe subsequently asked the district court to suppress his pre-arraignment confession because it occurred more than six hours after the LAPD arrested him. The district court denied this motion.

Prior to his trial, Rowe also moved for leave to impeach Wilson, the victim, with her two prior felony convictions for theft and simple possession of narcotics. Stating that the theft conviction, which had occurred almost seven years prior to Rowe's trial, had "a lot of prejudice and almost no probative value," the court denied Rowe's request to ask Wilson about that offense. Further, although the court expressed a strong disinclination to allow cross-examination concerning the felony possession conviction, it reserved making a definitive ruling until after Wilson

had testified.[1]  Though the court ultimately decided to prohibit impeachment with this narcotics crime, the court did agree to give Rowe an opportunity to question Wilson about her drug habit.

After submission of the evidence, the jury convicted Rowe of both counts charged in the indictment.  On April 27, 1995, the district court sentenced Rowe to 160 months imprisonment, to be followed by three years of supervised release.  On appeal, Rowe challenges the district court's refusal to suppress his confession and its denial of his motion for leave to impeach Wilson with her previous felonies.

## II.  DISCUSSION

### A.  The district court's refusal to suppress Rowe's confession

■  Congress has directed that in any federal criminal prosecution "a confession ... shall be admissible in evidence if it is voluntarily given."  18 U.S.C. § 3501(a) (1994).  In this appeal, Rowe does not seriously contest the voluntariness of his statement; still, he claims that the district court should have suppressed his confession under § 3501(c), which provides in pertinent part:

> In any [federal] criminal prosecution ... a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in

bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

*Id.* § 3501(c).  Because Rowe tendered his statement approximately twelve hours after his arrest by the LAPD, he claims that the district court misapplied § 3501(c) when it permitted the Government to admit his confession into evidence.  This Court reviews de novo a district court's application of 18 U.S.C. § 3501.  *See United States v. Wilson,* 838 F.2d 1081, 1083, 1086 (9th Cir.1988) (stating that a district court's construction of § 3501 is reviewed de novo, and suggesting that a district court's determination of voluntariness for purposes of the statute is most likely subject to de novo review).

In *United States v. Alvarez–Sanchez,* 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994), the Supreme Court considered the parameters of § 3501(c).  That case had its origins in a search conducted by local law enforcement authorities at the residence of Pedro Alvarez–Sanchez on Friday, August 5, 1988.  While executing the warrant that authorized the search, the officers found, in addition to the illegal drugs for which they had been looking, $2,260 in counterfeit Federal Reserve Notes.  The officials placed Alvarez–Sanchez under arrest and booked him on state narcotics charges, and he spent the weekend in jail.  On Monday, August 8, 1988, the local authorities informed the United States Secret Service of the counterfeit currency they had discovered.  A short while later, Secret Service agents arrived to interview Alvarez–Sanchez; during the course of the interrogation, he made statements indicating that he had violated federal law.  The agents then arrested Alvarez–Sanchez and took him into federal custody; he was not arraigned before a federal magistrate until

---

1.  The court stated that it "could be talked into" allowing impeachment with the conviction for narcotics possession, depending upon Wilson's characterization of her drug problem.  The court elaborated:

> At such time as there is an appearance that she is lying about how severe her habit was, then if

I think these convictions suggest that there was probably a more serious habit than she is admitting from the stand, we're going to get to the convictions.  If I don't think that the convictions suggest a more serious habit than she's admitting from the stand, then we're not going to talk about convictions.

the following day. The state never arraigned or prosecuted Alvarez–Sanchez on the state felony charges for which he initially had been booked.

The Supreme Court rejected Alvarez–Sanchez's claim that § 3501(c) compelled suppression of his statement to the Secret Service Agents, which clearly was made beyond the statute's six hour "safe harbor" period. Noting initially that the subsection only applies when there has been a "delay" in presenting a prisoner to a federal magistrate, the Court reasoned that no delay could occur "until, at a minimum, there is some obligation to bring the person before such a judicial officer in the first place." *Alvarez–Sanchez,* 511 U.S. at ——, 114 S.Ct. at 1604. To be sure, there is no duty to present an individual to a United States Magistrate Judge unless the person is in custody for a transgression of federal law. *Id.* In the context of § 3501(c), then, no "delay" occurs when a suspect is being held solely for committing a state offense. *Id.* The court explained:

> If a person is arrested and held on a federal charge by "any" law enforcement officer-federal, state, or local-that person is under "arrest or other detention" for purposes of § 3501(c) and its 6–hour safe harbor period. If, instead, the person is arrested and held on state charges, § 3501(c) does not apply, and the safe harbor is not implicated. *This is true even if the arresting officers (who, when the arrest is for a violation of state law, almost certainly will be agents of the State or one of its subdivisions) believe or have cause to believe that the person also may have violated federal law. Such a belief, which may not be uncommon given that many activities are criminalized under both state and federal law, does not alter the underlying basis for the arrest and subsequent custody.* As long as a person is arrested and held only on state charges by state or local authorities, the provisions of § 3501(c) are not triggered.

*Id.* (emphasis added). Because Alvarez–Sanchez was in custody only on state charges when he made his incriminatory remarks to the Secret Service agents, § 3501(c) was at that time inoperative and could not justify suppression of his statement. *Id.; see also United States v. Pugh,* 25 F.3d 669, 674–75 (8th Cir.1994) (determining that § 3501(c) did not apply to a confession made by a person being detained on state drug charges, even though he was ultimately prosecuted for violations of federal narcotics laws).

■ In this case, we have no trouble in finding that § 3501(c) did not apply at the time Rowe made his statement. As in *Alvarez–Sanchez,* Rowe confessed when he was in custody solely on state charges. While certain LAPD detectives, approximately seven hours after Rowe's arrest, decided to notify the FBI of a possible violation of federal law, that circumstance does not affect the result in this case. *See Alvarez–Sanchez,* 511 U.S. at ——, 114 S.Ct. at 1604 ("§ 3501(c) does not apply ... even if the arresting officers ... believe or have cause to believe that the person also may have violated federal law."). The decisive factor is that when Rowe confessed he was being detained for a state crime, and it is unimportant that he happened to commit one of "many activities ... criminalized under both state and federal law." *Id.*

Indeed, the possibility of prospective federal involvement seems to have been much less of a certainty here than it was in *Alvarez–Sanchez.* Though the suspect in that case was being held on state charges, he was found in possession of contraband which would presumably be of overriding and abiding federal interest. Also, in contrast to Alvarez–Sanchez's interrogation, which was conducted by Secret Service officials, the federal agents in this case primarily observed Rowe's questioning because "at that time it was [LAPD Detective Freund's] case." The evidence suggests that the decision to bring federal charges against Rowe did not occur until after the interview.

■ Finally, despite Rowe's vehement contentions to the contrary, it is irrelevant in this case that the state elected to defer to the federal prosecution. *See Alvarez–Sanchez,* 511 U.S. at ——, 114 S.Ct. at 1604 ("The State's failure to arraign or prosecute [the detainee] does not alter th[e] conclusion [that § 3501 was inapplicable at the time the confession was made]."). Because § 3501(c) was

not operative at the time of Rowe's postarrest interview, the district court correctly declined to suppress his confession.[2]

### B. The district court's denial of Rowe's motion for leave to impeach Cynthia Wilson with her past felonies

The district court denied Rowe's pretrial motion for leave to impeach Cynthia Wilson, the victim, with her two prior felony convictions for, respectively, theft and possession of narcotics. While this ruling unquestionably would have been incorrect under *United States v. Nevitt,* 563 F.2d 406, 408 (9th Cir.1977) ("The defendant may always use prior felony convictions of a prosecution witness."), *cert.* denied, 444 U.S. 847, 100 S.Ct. 95, 62 L.Ed.2d 61 (1979), that case was expressly abrogated by the 1990 amendments to the Federal Rules of Evidence. Fed.R.Evid. 609, Advisory Committee's Note (1990). Under the present version of Rule 609(a), a district court must apply "the general balancing test of Rule 403 to protect all litigants against unfair impeachment of witnesses. The balancing test protects ... the government in criminal cases...." *Id.; see also United States v. Figueroa,* 976 F.2d 1446, 1456 (1st Cir.1992), *cert.* denied, 507 U.S. 943, 113 S.Ct. 1346, 122 L.Ed.2d 728 (1993). "In reviewing evidentiary rulings under Rule 609(a), broad discretion should be given to the trial court and its decisions should not be overturned absent an abuse of discretion." *United States v. Turner,* 995 F.2d 1357, 1363 (6th Cir.), *cert. denied,* 510 U.S. 904, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993); *see also United States v. Browne,* 829 F.2d 760, 762 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988).

The district court did not abuse its discretion when it refused to allow Rowe to impeach Wilson with her theft conviction.

Applying the Rule 403 balancing test to this offense, which occurred in 1988, the court stated that the crime had "a lot of prejudice and almost no probative value." The court thought that questioning Wilson about this conviction, which was for theft of an automobile, might allow the jury to improperly infer that the victim had stolen the car she was driving on the night of the carjacking. In fact, though, the owner of the carjacked automobile admitted to the police that Wilson was operating the vehicle with his consent. This set of facts convinces us that the district court acted within its broad discretion when it determined that Rule 403 counseled against admission of the conviction.

We acknowledge that we have more serious reservations about the district court's decision to limit cross-examination of Wilson concerning her relatively recent conviction for possession of illegal drugs. It seems to us that information regarding this narcotics crime had substantial probative value under the relevant facts. Nonetheless, even assuming, without deciding, that the court abused its discretion in disallowing impeachment on this issue, we find that the error was harmless in this case because there was considerable independent evidence to support the verdict. Significantly, the LAPD arrested Rowe in a carjacked vehicle less than one hour after it was reported stolen, and the arresting officers found in his possession a gun which fit the description of the weapon used in the crime. Most notably, however, Rowe himself provided a voluntary statement in which he confessed to committing the crime. In light of the overwhelming evidence of Rowe's guilt, any erroneous action on impeachment evidence by the district court was more likely than not harmless. *See United States v. Love,* 746 F.2d 477, 479 (9th Cir. 1984) (deciding that overwhelming evidence of guilt rendered harmless any error committed under Rule 609).

---

2. The Court in *Alvarez–Sanchez* declined to address the extent to which § 3501 impacts the traditional rule that a confession will be suppressed if local authorities arrest and detain an individual to give federal agents an opportunity to flout the rule requiring a prompt federal presentment. *See Alvarez–Sanchez,* 511 U.S. at —— ——, 114 S.Ct. at 1604–05; *Anderson v. United States,* 318 U.S. 350, 356, 63 S.Ct. 599, 602, 87

L.Ed. 829 (1943) (discussing traditional rule). Even assuming the continued vitality of this tenet, however, Rowe has not demonstrated that this case involves the "presumably rare scenario" of "improper collaboration" or a "working arrangement" between local and federal law enforcement. *See Alvarez–Sanchez,* at —— —— ——, 114 S.Ct. at 1604–05; *id.* at ——, 114 S.Ct. at 1605 (Ginsburg, J., concurring).

## III. CONCLUSION

For the reasons discussed above, we affirm Rowe's convictions.

AFFIRMED.