**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RICHARD A. BAILEY, AKA Richard
Allen Bailey, AKA Rick Bailey,
          *Defendant-Appellant.*

No. 11-50132

D.C. No.
2:09-cr-00327-
ODW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted
April 12, 2012—Pasadena, California

Filed August 27, 2012

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge B. Fletcher;
Dissent by Judge M. Smith

## COUNSEL

Stanley I. Greenberg, Law Offices of Stanley Greenberg, Los Angeles, California, for the defendant-appellant.

André Birotte Jr., United States Attorney; Robert E. Dugdale, Chief, Criminal Division, Assistant United States Attorney; Stephen I. Goorvitch, Major Frauds Section, Assistant United States Attorney; Los Angeles, California, for the appellee.

## OPINION

B. FLETCHER, Circuit Judge:

A jury convicted Richard A. Bailey of two counts of securities fraud. Bailey appeals his conviction arguing that he was prejudiced by the trial court's improper admission of a prior civil complaint filed by the SEC against Bailey. We agree and vacate Bailey's conviction and remand for a new trial.

## I.  BACKGROUND

Bailey was the President, Chief Executive Officer, and Chairman of the Board of Directors of Gateway, a small, public company involved in selling health and dietary supplements.[1] In 2002, Bailey met Richard Owens, another businessman, and the two began doing business together. The nature and legitimacy of some of their business deals was the critical issue at trial.

According to the prosecution, Bailey did not comply with the Securities and Exchange Commission's rules on stock issuances. The SEC requires public companies to disclose voluminous information before issuing stock (e.g. details regarding past performance; information about executives; intended use of the sale proceeds). This process can be time-consuming and expensive. Without these disclosures, the SEC allows public companies to issue stock to employees, consultants, or advisors who provide bona fide services to the company. The issuance cannot be used merely to raise capital for the company and must be in exchange for legitimate services.

In 2003, the SEC filed a civil complaint against Bailey and his company for violating Rule S-8, the rule that requires the distribution of stock to be in exchange for bona fide services. Bailey settled the lawsuit with no admission of liability.

In 2004, Bailey was criminally charged for issuing stock to Owens in order to raise capital for Gateway and for Bailey and the company's personal benefit, both of which are proscribed by Rule S-8. Bailey pled not guilty and proceeded to trial. His current appeal is from the jury conviction.

Prior to trial, the prosecution filed a motion in limine seek-

---

[1]Gateway's Chief Operating Officer, Florian R. Ternes was tried together with Bailey and also convicted. Ternes does not participate in Bailey's evidentiary challenge on appeal.

ing permission to introduce the fact that the SEC filed a civil complaint against Bailey in 2003. The prosecution argued that the 2003 complaint would show that Bailey knew that his conduct in 2004 was unlawful. The prosecution also argued that the prior complaint would establish that Bailey knew that he was required to comply with Rule S-8. The district court permitted the prosecutor to "introduce just the fact of the SEC complaint" but warned not to get "any deeper into it."

At trial, the prosecution presented witnesses who testified about the business dealings between Bailey and Owens. FBI Agent Scott Schofield provided extensive testimony about the numerous transactions between Gateway and Owens between April and June 2004, the time frame of the indictment. Specifically, Schofield testified that Owens received a total of $661,000 in S-8 stock in April and May of 2004 but that no documentation existed detailing the exchange of services for stock. Schofield testified that he believed that the lack of a written agreement and invoices between Owens and Gateway suggested that the arrangement was merely a ruse for unlawful activity. He admitted that there was a written agreement for the years 2002-03, but testified that no such agreement existed for 2004, the time frame at issue in this criminal case. On cross-examination, Schofield appeared to admit that verbal agreements would likely be sufficient for S-8 purposes and that written documentation was not *necessary* to comply with Rule S-8.[2]

Margaret Nelson, an attorney with the SEC's division of enforcement, testified that she deposed Bailey in 2006 and asked him about the S-8 issuances to Owens. Nelson read into evidence portions of Bailey's deposition where he testified that no time sheets or invoices existed that reflected the work

---

[2]A review of Nelson's testimony indicates that she too was skeptical about the transactions in large part because Bailey could not provide invoices or agreements delineating the consulting arrangement between Bailey and Owens.

Owens performed, Gateway's accounting documents showed that Owens received $505,000 in stock, and Bailey did not believe Owens performed that amount in services. Nelson also testified that in 2003, the SEC filed a civil enforcement action against Bailey, Gateway, and others, alleging that they violated SEC rules by using S-8 to raise capital instead of exchanging stock for bona fide services.

The prosecution's star witness was Owens. Owens testified that in the spring of 2004, Bailey and Ternes asked him to accompany them on a trip to Utah to look at some real estate. One of the properties they viewed was Aspen Cove, a hunting and fishing lodge. Owens testified that Bailey and Ternes were interested in purchasing the property and began negotiating terms. Owens testified that Bailey and Ternes wanted to make a down payment between $400,000 and $600,000, and in order to come up with the funds, they planned to issue Owens S-8 stock, which he would trade through his brokerage account and send them back the proceeds to use for the down payment. In exchange, Owens would receive the difference between the proceeds from the sale of the stock and the down payment and also be able to use the lodge at his pleasure. Owens testified that they had engaged in this type of transaction "several times prior" and that he knew at the time that the proposal was not legitimate. When asked why Owens went along with the plan knowing that it was not legitimate, he said that "[g]reed overtook the need" and that he viewed the transaction as "help[ing] a brother out."

Owens testified that there was a written consulting agreement delineating the terms of the agreement, but that it was entered into "after the fact, after [the SEC] investigation started" and that the document was "[a]ll just smoke and mirrors." Owens testified that he "may have signed a consulting agreement or papers that stated that [he was] a consultant for Gateway" but that those documents were not at all "real or legitimate."

Owens testified that he did the same type of deal with Bailey and Ternes using S-8 stock for another parcel (the "Pepper Lane" building).

On cross-examination, defense counsel attacked Owens's credibility. Owens admitted that he had been charged with federal crimes relating to the improper issuance of S-8 stock and was facing thirteen years in prison. He admitted that his sentencing date had been continued several times so that he could testify at Bailey's trial, and that he was cooperating with the prosecutor in the hopes of receiving a lower sentence. Owens admitted that he had perjured himself on his tax return, raising doubts about whether he was telling the truth since he had lied before. Defense counsel also impeached Owens's credibility by eliciting evidence of an assault on his ex-wife, his excessive use of drugs and alcohol, and the circumstances leading to the decline of his relationship with Bailey.[3]

Bailey did not testify. His defense was that he did nothing illegal because the S-8 stock issuances were for legitimate consulting services. Bailey's daughter testified that through Owens's business contacts, she and other Gateway employees flew to New York to meet with executives at the Home Shopping Network and the corporate office of Nathan's Hot Dogs about potential business endeavors.

Defense counsel argued that Bailey issued the stock to Owens in exchange for bona fide services. First, Owens provided connections to important business people—connections that were supposed to allow Bailey to grow his business. Second, Owens helped locate and negotiate the Aspen Cove deal, and was ultimately able to secure an additional 36 acres of land for the original asking price. Bailey's counsel argued that

---

[3]Bailey's relationship with Owens allegedly soured after he made a pass at Bailey's daughter, and after learning that Bailey wanted to use the Aspen Cove lodge for Mormon religious activities.

simply because Bailey may not have ultimately received the full value of the stock issuance does not mean that when he entered into the transaction, he did so with an unlawful purpose. And of course, defense counsel argued that Owens was a crook, that he had lied before and was lying now to obtain leniency in his sentencing.

The prosecutor's closing tracked each of the four elements of the crime.[4] He repeatedly argued that willfulness was the most important element the government had to prove. In order to prove that willfulness was satisfied, the prosecutor highlighted the prior SEC complaint, and argued that Bailey had broken the law before and then done it again.

After deliberating for one day, the jury returned a guilty verdict against Bailey and Ternes. Bailey was sentenced to 30 months' imprisonment.

## II. DISCUSSION

The issue on appeal is whether the trial court erred by allowing evidence of the prior civil complaint filed by the SEC in 2003 which named Bailey and his company for improper use of Rule S-8.

---

[4]The elements of the crime are:

First, the defendant directly or indirectly sold securities or offered to sell securities. Second, no registration statement was filed and in effect with the Securities and Exchange Commission as to such securities. Third, interstate transportation or communication of the mails were used in connection with the sale or offer of sale of the securities, and, fourth, defendant acted willfully. A person acts willfully under the federal securities laws by intentionally undertaking an act that one knows to be wrongful. Willfully does not require that the person know specifically that the conduct was unlawful.

**(A)   Standard of Review**

Whether the district court erred in permitting the government to introduce the prior civil complaint because it did not satisfy Rule 404(b)'s admissibility requirements is reviewed for abuse of discretion. *United States v. Romero,* 282 F.3d 683, 688 (9th Cir. 2002).

**(B)   Rule 404(b)**

**(1)   Applicable Legal Standards**

**[1]** Bailey argues that the prior civil complaint amounted to impermissible "other act evidence" barred by Federal Rule of Evidence 404. "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." *Romero*, 282 F.3d at 688 (citing Fed. R. Evid. 404(a)); *see also United States v. Derington*, 229 F.3d 1243, 1247 (9th Cir. 2000). "However, Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Romero*, 282 F.3d at 688. The government argues that the evidence was used to show proof of intent and knowledge.

**[2]** In the Ninth Circuit, a four-part test is used to determine the admissibility of evidence pursuant to Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*Romero*, 282 F.3d at 688 (citation omitted). The government "has the burden of proving that the evidence meets all of the

above requirements." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Romero*, 282 F.3d at 688 (citation omitted).[5]

### (2)   Analysis

Bailey primarily challenges the admissibility of the complaint under the third prong of the FRE 404(b) test: the evidence must be "sufficient to support a finding that defendant committed the other act." *Romero*, 282 F.3d at 688. In *Huddleston*, the Supreme Court clarified that the government need not prove Rule 404(b) evidence by a preponderance of the evidence; rather, "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." 485 U.S. 681, 685 (1988); *see also Verduzco*, 373 F.3d at 1027.

**[3]** We conclude this standard was not met in Bailey's case. In order for the government to introduce the prior SEC complaint, there must have been sufficient evidence from which the jury could reasonably conclude that Bailey actually committed the allegedly-similar bad acts. *See Huddleston*, 485 U.S. at 685. The only evidence offered to meet this standard was the complaint itself.

**[4]** As an initial matter, none of the facts alleged in the complaint were admitted to by Bailey or proven. In fact, Bailey settled the civil action with no admission of liability. The out-of-circuit cases are clear that where a defendant admits

---

[5]Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

nothing, the evidence of the prior conduct is inadmissible. In *United States v. Cook*, 557 F.2d 1149 (5th Cir. 1977), defendants were charged for their participation in selling oil and gas drilling ventures that violated SEC Rules. *Id.* at 1150-1151. A year before, the SEC had filed a civil enforcement action against defendants alleging violations of the same rules. *Id.* at 1151. The district court admitted evidence of injunction documents resulting from a settlement in the prior civil case. The Fifth Circuit reversed finding that because the defendant neither admitted nor denied the fraud alleged in the injunction, offering the documents themselves would cause the jury "to infer that prior wrongful acts had been committed, an inference impermissible." *Id.* at 1153. In the case of *In re Adler, Coleman Clearing Corp.*, the defendants were charged with fraud. 1998 WL 160036, at *4 (Bkrtcy. S.D.N.Y 1998). The government sought to introduce evidence of an SEC Administrative Release which stated that members of the defendant-broker company had previously violated federal securities laws for the purpose of showing knowledge and intent to commit fraudulent securities transactions. *Id.* at *4, *8. The court refused to admit the evidence because the affected defendants accepted an offer of settlement but "neither admitted nor denied the findings made therein," and thus could not be used to show that the defendants "actually engaged in the conduct alleged." *Id.* at *8.[6]

---

[6]We find additional support for the notion that inconclusive allegations of prior similar behavior is not useful. In the civil rights context, courts are reluctant to admit evidence of prior excessive force complaints against a police officer if the complaints are unsubstantiated. For example, in *Sibrian v. City of Los Angeles*, No. 06-56532, 288 Fed.Appx. 385, (9th Cir. Aug. 1, 2008), an unpublished disposition, the panel upheld the district court's decision to exclude evidence of prior complaints involving the defendant police officer stating that the officer was exonerated on three of the prior incidents and that the evidence was inconclusive on the fourth incident. *See also Hopkins v. Andaya*, 29 F.3d 632, 1994 WL 396202, at *2 (9th Cir.1994) (unfounded citizen complaints were not relevant in Section 1983 action). Other circuits have reached the same conclusion. *See United States v. Taylor*, 417 F.3d 1176, 1179 (11th Cir.2005) (district court did not abuse discretion in denying plaintiff's request to offer

**[5]** We agree with the reasoning of these cases.[7] A defendant may settle a case for a variety of reasons. He may have committed the conduct alleged in the complaint or he may not have—but having settled the claim, there is no way to know. Admitting prior conduct charged but settled with no admission of liability is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question. There is no logical relevancy to admitting this type of evidence.[8]

**[6]** A second and more basic reason leads us to conclude the disputed evidence was improperly admitted. We risk stating the obvious here: a complaint is merely an accusation of conduct and not, of course, proof that the conduct alleged occurred. The prosecution did not introduce evidence that Bailey misused the SEC rules—rather, the prosecution offered only the complaint, which is far from evidence of anything. Admitting the complaint may have permitted the jurors to succumb to the simplistic reasoning that if the defendant was

unfounded citizen complaints to prove police officer's bias and motive). Even where the defendant police officer had not been exonerated on a civilian complaint, the Second Circuit stated that "the relevance of a single unsubstantiated charge is obviously limited." *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir.1991).

[7]The dissent states that our "discussion of settlement evidence is a red herring because whether Bailey accepted or denied responsibility in the settlement is not at issue in this case, and was not raised on appeal." Dissent at 9747. However, Bailey did raise this issue—his opening brief states that the complaint should not have been admitted because it was "unverified, never proven to a judge, never proven to a jury, and never admitted by Mr. Bailey" and because Bailey settled the case "with no admission of liability." That Bailey never admitted responsibility is entirely relevant here because the government used the complaint to argue that Bailey had "broken the law before" when there was no such evidence.

[8]It is a well-established principle that in order to be properly admitted, other-acts evidence, like all evidence, must be relevant. *See* Fed.R.Evid. 401.

accused of the conduct, it probably or actually occurred. Such inferences are impermissible.

**[7]** The government barely addresses this issue but instead leans heavily on the purpose for which the evidence was offered, *i.e.*, "to prove that defendant acted intentionally, knowing that his actions were wrong." There is some logic to the argument that evidence that Bailey had previously been accused of violating Rule S-8 shows that he was on notice of the type of prohibited conduct. But this is not enough. The prosecution was still required to prove that the evidence was sufficient to support a finding that Bailey committed the act charged in the complaint. This a mere complaint cannot do.

The government argues that courts routinely admit evidence of mere accusations, *i.e.,* prior arrests. We agree that courts permit evidence of prior arrests, but such evidence must still satisfy the four-part test for admissibility. In the cases we have found where evidence of a prior arrest is admitted, a person with knowledge of the crime testifies to the circumstances of the prior offense. *See United States v. Basinger*, 60 F.3d 1400, 1408 (9th Cir. 1995) (arresting officer's testimony is sufficient to establish that the prior act occurred); *United States v. Hinton*, 31 F.3d 817, 823 (9th Cir.1994) (uncorroborated testimony by victim is sufficient evidence that the prior act occurred).

Where a prior arrest is insufficient to prove commission of the offense, it does not satisfy the third prong of the test, and therefore should not be admitted. In *United States v. Marshall*, the defendants were convicted on multiple drug charges. 173 F.3d 1312, 1313 (11th Cir. 1999). A search of their homes revealed a factory equipped to produce cocaine, but no actual cocaine. *Id.* at 1314. The government sought to introduce evidence that the defendants were previously arrested based on their presence in a house where cocaine paraphernalia was present. The police investigation revealed no evidence linking the defendants to cocaine production, so the

charges were dismissed. The Eleventh Circuit reversed the district court's decision to admit the evidence of the prior arrest stating:

> . . . [T]here was nothing in the evidence presented that tended to prove intent to distribute. In order for the evidence to be probative of intent, the jury would have to believe that [defendants] previously committed the offense of possession with intent to distribute (or conspiracy to do the same). The evidence of the arrest was insufficient to prove commission of the offense; other evidence had to be presented from which the jury reasonably could conclude that the offense was committed . . . Consequently, the jury could not have reasonably concluded—based on the evidence before it—that [defendants] had been involved in crack distribution, and therefore the prior arrest and the circumstances surrounding it were not probative of intent.

*Id.* at 1317.

In *Bruce v. City of Chicago*, the defendant-City did not even object to the civil rights plaintiff's request that evidence of his prior arrests that did not lead to a conviction be excluded. No. 09 C 4837, 2011 WL 3471074, at *9 (N.D.Ill. July 29, 2011). In *United States v. Donnell*, the defendant objected to the admission of evidence of his prior arrests for which he was neither charged nor convicted, but the court declined to address the issue, instead concluding that any error was harmless. 596 F.3d 913, 922 (8th Cir. 2010).

The dissent attempts to recast the government's use of the complaint as being "narrowly offered for the purpose of proving that Bailey knew it was illegal to issue unregistered stock without receiving bona fide services in return." This characterization of how the government used the evidence is simply not so—the government used the complaint to prove intent.

Even the government concedes this point. At the ruling on the motion in limine, the prosecutor stated "I think the fact of the complaint in 2003 is relevant to establishing their intent in 2004." And in the government's response brief, it states "[i]n order to prove that defendant acted intentionally, knowing that his actions were wrong, the government relied on evidence that the SEC had sued defendant in 2003 for essentially identical conduct." Indeed, the prosecutor admitted intent was the crucial element in the case and highlighted the complaint to show the element satisfied. The prosecutor said, referring to the complaint, that the SEC had told Bailey "don't break the law anymore" and "stop, don't do this again." The clear implication of the statement "don't break the law anymore" is: he broke the law before. Similarly, the unmistakable implication of "stop, don't do this again" is: he did this before. Those statements by the prosecutor were not merely meant to prove that Bailey had knowledge of Rule S-8's prohibitions. Rather, the statements go directly to the only element at issue in the case: Bailey's intent to violate Rule S-8 based on his alleged previous conduct, of which he had been accused but never admitted.

It must be said, though, that a complaint would not establish knowledge even if the prosecution had purported to use it only for that reason. All a complaint establishes is knowledge of what a plaintiff claims. It does not establish the truth of either the facts asserted in the complaint, or of the law asserted in the complaint. Since the previous complaint was never proved, nor was the truth of any of it conceded, it could not have established knowledge of the law. A complaint may state that cars driving southbound are required to stop at the intersection of 1st and Main, and that the defendant did not stop. But such a complaint establishes neither that southbound vehicles have a duty to stop, nor that the defendant failed to stop. Likewise, the SEC complaint establishes neither knowledge of the law nor a past wrongful act.

**[8]** We hold that a mere accusation of prior conduct is insufficient to support a finding that the prior act was committed and, therefore, does not tend to prove that the defendant committed the act for which he is on trial. In order for evidence of a prior accusation to be admissible, there must be sufficient, independent evidence (besides the accusation alone) to support a finding that the prior conduct occurred. No such evidence was introduced here[9] and, therefore, the complaint should not have been admitted.

## (C)   Harmlessness

**[9]** Having concluded that the complaint was improperly admitted, we consider whether the error was harmless. Where, as here, the district court's error is of a nonconstitutional magnitude, "[w]e must reverse unless there is a 'fair assurance' of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir.1997) (en banc) (quoting *United States v. Crosby*, 75 F.3d 1343, 1349 (9th Cir.1996)). The burden to show the harmlessness of the error is on the party benefitting from the error, *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005), in this case, the government. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005). Therefore, our review begins with "a presumption of prejudice." *Obrey*, 400 F.3d at 701.

The prosecution's case turned almost exclusively on the testimony of one witness, Owens, who was trading his testimony in the hopes of a lesser sentence. Although FBI Agent Schofield's testimony about the number of transactions and money exchanged between Owens and Bailey in April through June 2004 provided some independent, unbiased cor-

---

[9]Owens testified generally that he and Bailey had previously engaged in the type of transaction charged in the 2004 complaint, but he did not provide any specifics about that alleged conduct, much less discuss the specific acts charged in the 2003 complaint.

roboration of the prosecution's theory, Schofield admitted that he did not know for certain whether Bailey's stock issuances to Owens were made in exchange for bona fide services. Instead, Schofield simply believed that the lack of a written agreement and invoices between Owens and Gateway suggested that the arrangement was a sham.

Schofield, however, acknowledged that there was a written agreement for the years 2002-03. By 2004, Bailey and Owens had been involved in various business dealings and it is entirely plausible that the April through June stock issuances were for Owens's business services, but there was simply no written agreement that memorialized the arrangement. Indeed, Schofield appeared to admit that verbal agreements to exchange services for stock would not likely violate Rule S-8, provided, of course, the agreement was legitimate.

Bailey's deposition testimony proffers a plausible, lawful explanation for the transactions.[10] He asserted that the S-8 shares issued to Gateway consultants were generally commensurate with the services they rendered. When asked what type of services Owens provided to Gateway, Bailey responded that Owens "had a lot of connections" and "[s]eemed to know what he was doing in marketing." Because Gateway's success *depended* on marketing its products, paying Owens for his connections to people in the marketing industry would allow Gateway to grow its business and thus issuing stock for such services is entirely legitimate. For example, Bailey testified that Owens helped Gateway launch a new product, the Pete Rose grill, just before Pete Rose was to be inducted into the baseball Hall of Fame. Specifically, Owens worked directly with Pete Rose and others to manufacture and market the product. When asked whether Owens performed services commensurate with the shares he received

---

[10]Nelson, the SEC attorney who deposed Bailey, testified about portions of Bailey's deposition testimony and the relevant pages were admitted as a trial exhibit.

for his work on the Pete Rose grill, Bailey justified the issuance of shares as follows: if Pete Rose had been inducted into the Hall of Fame, the shares issued to Owens would no doubt be considered fair. Of course, a retrospective view of the stock issuances to Owens made them appear suspect because the project was eventually a bust. That the project was a bust does not mean that Gateway's stock issuance to Owens was a sham, it merely means that the business risk Gateway took on Owens's ability to turn a profit on the project failed.

Bailey also testified that Owens provided bona fide services on the Aspen Cove and Pepper Lane deals. Specifically, Bailey said that Owens "suggested the purchase of [Aspen Cove] and helped negotiate the purchase." This testimony was corroborated by John Boschetto, the seller of the Aspen Cove property, who testified that Owens was one of the people interested in the property, and helped negotiate the deal.

In short, there was ample evidence to corroborate Bailey's defense that the stock issuances to Owens were compensation for services rendered.

The damaging testimony came from Owens himself. Owens admitted that he "might have" signed a consulting agreement but insisted that those agreements were not legitimate, but were "just smoke and mirrors." With respect to the Aspen Cove deal, Owens testified that they discussed how the deal would transpire: Gateway would issue Owens S-8 stock, Owens would trade the stock through his brokerage account, keep some of the proceeds himself and wire the remaining balance to whatever entity Bailey designated. Owens knew at the time that the transaction was not legitimate and just viewed it as trying to help Bailey. Owens testified that they had engaged in this type of transaction several times before. Owens testified that he expected to have no part of the Aspen Cove deal other than to be permitted to stay at the lodge for free whenever he desired. Owens testified that in order to pur-

chase the Pepper Lane property, he and Bailey engaged in the same type of transaction.

Clearly, the jury had to believe either an admitted crook hoping for leniency (Owens: This was all a sham and everyone knew it) or an accused crook (Bailey: I was issuing stock to Owens for his real services) and his surrogates.

We do not suggest that a jury could never find a defendant guilty based on the testimony of a cooperating witness who is trading testimony in the hopes of a lesser sentence. But when the government's case is built around a single witness with questionable motives, it can hardly be said that the government's case was strong. In most cases where courts have found harmless error despite the erroneous admission of evidence, the properly admitted evidence was highly persuasive and overwhelmingly pointed to guilt. *See United States v. Rendon-Duarte*, 490 F.3d 1142, 1145 (9th Cir. 2007) (evidentiary error harmless in light of police officer's testimony and physical evidence of the crime); *United States v. Rowe*, 92 F.3d 928 (9th Cir. 1996) (assuming, arguendo, that district court committed evidentiary error, such error was harmless in light of other evidence including defendant's confession and weapon found in his possession); *United States v. Yazzie*, 59 F.3d 807 (9th Cir. 1995) (district court's evidentiary error harmless because of abundant, independent evidence including the victim's detailed statements implicating the defendant); *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1047 (9th Cir.1990) (finding evidentiary error was harmless where defendant made incriminating statements that were properly admitted). Here, there was no confession by Bailey, no audiotape or videotape of Bailey discussing the misuse of Rule S-8, no emails or other documentary evidence, and no direct evidence from unbiased witnesses. There simply was no substantial evidence of Bailey's guilt other than Owens's say so. We conclude that the testimony of just one witness who has a great deal of incentive to lie cannot alone constitute overwhelming evidence of Bailey's guilt.

We must therefore evaluate the potential impact of the improperly admitted evidence keeping in mind that the government's case against Bailey was weak. The prosecutor made numerous references to the prior complaint during his closing argument, and as this court has recognized, "closing argument matters . . . a great deal." *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993).

**[10]** The prosecutor recognized that Bailey's intent to commit the crime was the sole issue in the case. He stated that there was "an extraordinary amount of evidence to show that [Bailey] acted willfully." He then highlighted the prior complaint. Bailey had been told, argued the prosecutor: "don't break the law anymore. . . . Pay us for your deliberate violations of the law." The prosecutor emphasized the temporal proximity between the prior SEC complaint and the conduct at issue in this litigation when he said: ". . . the fact that [the SEC had sued Gateway] a year before all this nonsense with Owens, that is crucial. That is important because when the SEC filed this lawsuit, they were just telling them straight out, stop, don't do this again. They blew through this stop sign just as sure as if they were driving down the street." At this point, the prosecutor displayed a red stop sign which served as a graphic depiction of Bailey's alleged abuse of Rule S-8, and likely seared in the jury members' minds the warning given Bailey by the SEC. Indeed, the government's references to the SEC Complaint, both orally and visually, went to the heart of the case.

**[11]** Beginning, as we must, with a "presumption of prejudice," we conclude that the introduction of the prior SEC complaint was not harmless. The record reveals this was a close case. There was considerable evidence supporting Bailey's defense. The government's case turned entirely on Owens's testimony; he had obvious credibility issues. Improperly admitted evidence, intended to show that Bailey had broken the law before and knew it, could have tipped the jury in the government's favor.

## III.   CONCLUSION

**[12]**  The trial court erred by admitting the prior civil complaint. That evidentiary error was not harmless. We therefore vacate Bailey's conviction and remand for a new trial.

**REVERSED and REMANDED for a new trial.**

---

M. SMITH, Circuit Judge, dissenting:

I respectfully dissent. I would uphold the district court's admission of the SEC's Complaint, under Rule 404(b), because the Complaint showed that Bailey knew that he had been previously sued for issuing unregistered securities, in violation of SEC Rule S-8. Because the Complaint was admitted for the purpose of showing Bailey's *knowledge*, it is not, as the majority contends, necessary that the Complaint, in and of itself, be "sufficient to support a finding that Bailey committed the act charged [therein]." Bailey's knowledge of Rule S-8 was conditioned upon the fact that he had been named as a defendant in the prior Complaint, not whether he actually committed the acts alleged therein. Accordingly, I would hold that the district court did not err, let alone abuse its discretion, in admitting the Complaint as evidence, under Rule 404(b).

Because I would find that the evidence was properly admitted under Rule 404(b), I believe that the majority should have applied a Rule 403(b) balancing analysis to determine whether the probative value of the Complaint was substantially outweighed by its prejudicial effect. Nonetheless, even assuming error, as did the majority, I would hold that such error was harmless in light of the abundance of evidence admitted concerning the series of highly suspicious transactions between Bailey and Owens involving unregistered S-8 stock.

## I.  Rule 404(b)

We review the district court's decision to admit evidence under Rule 404(b) for an abuse of discretion. *United States v. Khan*, 993 F.2d 1368, 1376 (9th Cir. 1993). Federal Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, such evidence may be introduced for "other purposes," including intent, knowledge, notice, and absence of mistake or accident. *Id.* Evidence of other acts may be admitted if:

> (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) *(in cases where knowledge and intent are at issue) the act is similar to the offense charged.*

*United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010) (emphasis added.).

Rule 404(b) has thus long been characterized as "a rule of inclusion—not exclusion." *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008). Indeed "[u]nless the evidence of other acts *only* tends to prove propensity, it is admissible." *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (emphasis added). We have also repeatedly emphasized the "low threshold" for finding Rule 404(b) evidence to be "sufficient proof" of a prior act. *See, e.g.*, *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir. 1990); *United States v. Romero*, 282 F.3d 683, 688. Thus, Rule 404(b) "is not so much a character rule as a special aspect of relevance because it does not prohibit character evidence generally, only that which lacks *any* purpose but proving character." *United States v. Douglas*, 482 F.3d 591 (D.C. Cir. 2007) (emphasis added).

It is true that the Supreme Court, in *Huddleston*, cautioned against reading the sufficiency of evidence of requirement under Rule 404(b) as carte blanche for the Government to introduce "a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). However, the Court clarified, in *Huddleston*, that the sufficiency requirement of Rule 404(b) was tied to the relevancy requirements of Rule 402 and 104, explaining: "Evidence is admissible under Rule 404(b) only if it is relevant. 'Relevancy is not an inherent characteristic of any item of evidence but exists *only as a relation between an item of evidence and a matter properly provable in the case*.' " *Id.* (citing Fed. R. Evid. 401, advisory committee's notes, 688) (emphasis added); *id.* at 690, 691.

The majority reasons that the district court abused its discretion in admitting the Complaint because a complaint "is merely an accusation of conduct and not of course, proof that the conduct alleged occurred." As an initial matter, the majority cites no authority for the proposition that a civil complaint is insufficient proof of conduct. Instead, it devotes a significant portion of its discussion to whether documents arising out of settlements, in which the defendant neither admitted nor denied the findings therein, could be admitted under Rule 404(b). The majority relies upon a Fifth Circuit case from 1977, *United States v. Cook*, 557 F.2d 1149 (5th Cir. 1977) and an unpublished bankruptcy case from the Southern District of New York, *In re Adler, Coleman Clearing Corp.*, No. 95-08203/JLG, 1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3, 1998), to conclude that a complaint is inadmissible proof of prior bad acts when the case is subsequently settled with no admission of guilt. *Cook* is completely inapposite, and involved the admissibility of injunctive relief to prove the scheme, motive, and knowledge of the defendant. 557 F.2d at 1152. Nowhere in *Cook* did the court examine the potential admissibility of a prior civil complaint. *In re Adler* is equally unhelpful to the majority's position; there, the court rejected

the admissibility of an SEC Administrative Release, a type of agency news document, which reported and described the proceedings and settlement of an earlier SEC case, under Rule 404(b). 1998 WL 160036, at *8. And notably, while the court deciding *In re Adler* rejected the admissibility of the SEC Administrative Release, it held that a prior grand jury indictment *was* admissible under Rule 404(b), further undercutting the majority's argument that charging documents such as a complaint or an indictment, are insufficient evidence of prior acts. *Id.* at *4, *8. Ultimately, however, the majority's discussion of settlement evidence is a red herring because whether Bailey accepted or denied responsibility in the settlement is not at issue in this case, and was not raised on appeal. Moreover, the settlement agreement was not offered as evidence, and whether Bailey accepted liability in the previous suit does not bear on whether the suit informed Bailey's knowledge of Rule S-8 regulations.

The Government proffered the Complaint as evidence of Bailey's knowledge of Rule S-8's prohibition on trading in unregistered stock. Thus, the crux of this appeal turns on whether the Complaint constituted sufficient evidence, under *Huddleston* and its progeny, of a prior act that would have apprised Bailey of the pertinent prohibitions and requirements of Rule S-8. Contrary to the majority's contentions, I would hold that it is not necessary that the allegations in the Complaint be true in order for the previous suit to have informed Bailey of Rule S-8's requirements.

Under *Huddleston*, "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." 485 U.S. at 690.[1] Here, evidence was relevant insofar as it bore upon Bailey's knowledge of Rule S-8. The condi-

---

[1] *Huddleston* rooted the relevancy requirement of Rule 404(b) in "Rule 402—as enforced through Rule 104(b)." 485 U.S. at 691.

tional fact upon which the Complaint was proffered was that Bailey knew that the prior Complaint accused him of knowingly violating Rule S-8. Thus, the "prior act" at issue under the third prong of Rule 404(b) was not that Bailey committed the acts alleged in the Complaint, but the fact and extent of Bailey's knowledge of the Rule S-8 claims, as alleged in the Complaint. The Complaint need only be sufficient evidence of Bailey's knowledge of his involvement in the civil suit— not the veracity of the claims against him—in order for it to be admissible.

The majority maintains that the government "concede[d]" that the Complaint was offered to prove intent. This is simply incorrect. The government's response brief explains that the Complaint was offered to prove the knowledge component of willfulness, as defined under 15 U.S.C. §§ 77e, 77x.[2] The transcript from the court's ruling on Bailey's motion in limine proves that the government offered the Complaint for the purpose of establishing the "knowing" element of willfulness: "One way I intend to show [willfulness] is the fact that they were sued by the federal securities regulators in 2003 *knowing* that this is perceived to be wrongful, *knowing* that it is perceived to be serious enough to merit federal action." (emphases added). Indeed, it was Bailey's counsel who conceded that it believed the government's argument was that the Complaint showed "that the *defendants knew that someone from the SEC could file such a complaint* . . . ." (emphasis added). The court's ruling on the motion in limine further confirms that, "without getting any deeper into it," the Complaint was offered only for the legitimate purpose of proving Bailey's knowledge: ". . .we are simply going to introduce this for the

---

[2]We have defined willfulness in the context of federal securities laws as "intentionally undertaking an act that one *knows* to be wrongful." *United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004) (emphasis added). Thus, in order to prove the "willfulness" requirement of the registration provisions of 15 U.S.C. §§ 77e, 77x, the government had to prove Bailey's knowledge.

purpose of showing that he certainly knew what he was doing, that it was illegal." Thus, the majority incorrectly conflates the concepts of intent and knowledge to argue that the Complaint was used essentially as propensity evidence. In reality, the statements of the government, defense counsel and the court expressly demonstrate that the Complaint was offered for the purpose of proving Bailey's knowledge.

Indeed, it is the majority who concedes: "All a complaint establishes is knowledge of what a plaintiff claims." This is exactly the point. The Complaint stated the precise code sections of Securities Act at issue, and literally quoted the duties imposed by Rule S-8:

> The Instructions to Commission Form S-8 state that Form S-8 is available to register securities offered and sold to the Issuer's consultants and employees 'only if (i) they are natural persons; (ii) they provide *bona fide* services to the registrant; and (iii) the services are not in connection with the offer or sale of securities in a capital raising transaction, and do not directly or indirectly promote or maintain a market for the registrant's securities . . .'

Likewise the Complaint expressly identified the specific actions that violated Rule S-8: ". . . the issuers either obtained little or no *bona fide* services in exchange for the stock, or issued the stock in connection with a capital-raising transaction." Thus, contrary to the majority's representations, not only did the Complaint specifically state the duties imposed by law under Rule S-8, but also the very type of conduct that would violate it. This alone should constitute a sufficient basis to affirm the district court's discretion in admitting the Complaint.

We have repeatedly held under *Huddleston* that Rule 404(b) is an inclusive rule designed to permit the admissibility of prior act evidence when it is offered for any other legiti-

mate basis than to prove propensity. *See generally Cherer,* 513 F.3d at 1147. Rule 404(b) admissibility reflects the court's acknowledgment that "[e]xtrinsic acts evidence may be critical to the establishment of a truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685. Since Bailey confirmed his knowledge and awareness of the SEC Rule S-8 suit against him during his deposition, the Complaint constituted sufficient evidence of the prior act (that Bailey was previously sued by the SEC for trading in unregistered securities) and the conditional fact of the Complaint's relevance (Bailey's knowledge). Accordingly, I would hold the district court did not err, let alone abuse its discretion, in admitting the Complaint under Rule 404(b).

## II.   Rule 403(b)

We review the district court's balancing analysis under Rule 403(b) for an abuse of discretion standard. *United States v. Khan*, 993 F.2d 1368, 1376 (9th Cir. 1993). "Once it has been established that the evidence offered serves one of the [404(b)] purposes, the . . . 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Curtin*, 89 F.3d 935, 944 (9th Cir. 2007). Limiting instructions are generally sufficient to cure any prospective prejudicial impact. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2001).

To prove its case, the Government was required to establish that Bailey acted "willfully" in violating the registration provisions of the Securities Act of 1933. *See* 15 U.S.C. §§ 77e, 77x. We have held that willfulness may be proven under securities laws by showing that a defendant "intentionally under[took] an act that one kn[e]w[ ] to be wrongful." *United States v. Tarallo*, 380 F.3d 1174, 1188 (9th Cir. 2004).

Here, the Complaint was highly probative of Bailey's knowledge of federal securities laws. The Complaint not only apprised Bailey of Rule S-8 generally; it expressly articulated the SEC's prohibition against issuing S-8 stock except in return for bona fide services. The probativeness of the Complaint is highlighted by the fact that defense counsel repeatedly put Bailey's intent at issue during the course of the trial, including statements to the jury such as, "Well, by definition, I haven't gotten bona fide services, but did I commit a crime? I think not because it wasn't wrongful. It wasn't intentional, wrongful." The Government thus used the Complaint, including the type of relief sought therein (permanent injunctive relief, disgorgement of ill-gotten gains, payment of civil money penalties, and officer-director bar), to show that Bailey was on notice concerning the requirements of Rule S-8, and specifically, that Bailey was aware of the bona fide services requirement for the issuance of S-8 stock.

Since the Complaint is highly probative of Bailey's knowledge, we must next determine whether the risk of unfair prejudice, undue delay, and confusion of the issues substantially outweighs the probative value. *Curtin*, 89 F.3d at 944. It is clear to me that it does not, given the Court's multiple limiting instructions to the parties and to the jury. The Court strictly limited the purposes for which the jury could consider the Complaint, both in verbal instructions to the parties and in its formal written instructions to the jury. Indeed, the district court expressly instructed that the evidence of unproven conduct may be considered "only for its bearing, if any, on the question of the defendant's intent, plan, knowledge, absence of mistake, and absence of accident, and for no other purpose." The district court specifically instructed the jury "not [to] consider this evidence as evidence of guilt of the crime for which the defendants are now on trial." Accordingly, I would hold that the district court did not abuse its discretion in admitting the prior act evidence under Rule 403(b) because any prejudicial effect was cured by the district court's cautionary instructions to the jury. *See Dubria*, 224 F.3d at

1002 ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact.") (internal citations omitted).

## III. Harmless Error Analysis

Finally, even assuming error in admitting the Complaint, I would hold that any error was harmless given the overwhelming evidence against Bailey. We review erroneous evidentiary rulings with a presumption of prejudice which may be rebutted by "a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted." *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005).

At trial, the Government presented the following evidence to prove that Bailey violated federal securities laws by issuing and selling shares to Owens in order to raise capital for the Aspen Cove and Pepper Lane ventures, and for Bailey's personal gain:

- Physical Form S8 documents, Finance 500 documents and spreadsheets showing that Bailey issued over 1.1 billion shares ($600,000 value) to Owens without any consulting agreement for bona fide services, despite past similar deals.

- Monthly statements from Owens showing that upon receipt of those shares, Owens immediately sold them.

- Monthly statements showing that upon Owen's payment for the sale of the shares, that rather than reinvesting the money personally, Owens transferred the money through a series of transactions, back to finance the acquisition of Aspen Cove and Pepper Lane on Gateway's behalf (and ultimately, Bailey).

- Testimony from Boschetto, a seller of the Utah property, who testified that he never met or negotiated with Owens, despite the alleged consultative agreement, and Owens provision of the funds for the sale.

- Gateway's form 10-K showing that the company had acquired Aspen Cove and Pepper Lane, but never once mentioning Owens' role as a consultant.

- Documentary evidence that Owens was absent so frequently from Bailey's real estate operations that Bailey assumed power of attorney for Owens when completing various real estate transactions.

- Prior "2002" Consulting Agreement" in which Owens had agreed to provide consulting services for earlier work with Bailey.

- Owen's testimony, offering no exculpatory explanation for why he had no contract with Gateway, or Bailey, in the 2004 consulting transactions, or for why he had immediately funneled the stock sale money back to Gateway (despite the fact that this was purportedly his "compensation" for bona fide services rendered).

The majority discusses at length the plausible explanations proffered by Bailey for issuing the stock to Owens, and contends that the Government's case was "built around a single witness with questionable motives." The majority's analysis ignores the ample record evidence above that proves the strength of the Government's case. The majority opinion also fails to acknowledge, let alone refute, an abundance of documentary and demonstrative evidence introduced at trial— particularly the unexplained transfers and recirculation of the original stock funds back into the Aspen Cove and Pepper

Lane projects. The majority's conclusion that the Government's case "turned entirely on Owens' testimony" and the Complaint "could have tipped the jury in the government's favor" [sic] is further undercut by the fact that the Complaint and Owens' testimony bore upon completely different elements of the crime. Specifically, Owens' testimony primarily concerned whether he provided bona fide services to Bailey, but the Complaint was narrowly offered for the purpose of proving that Bailey knew it was illegal to issue unregistered stock without receiving bona fide services in return.

The Government presented ample documentary, testimonial and demonstrative evidence, in addition to Owens' testimony, showing that Bailey issued the unregistered for the purpose of generating funds for the Aspen Cove and Pepper Lane purchases. The evidence proving that series of events, as corroborated by Owens' testimony, was unaffected by the state of mind issues raised by the Complaint. Thus, I would hold that it is more probable than not that the jury would have reached the same verdict had the Complaint not been introduced.

## CONCLUSION

For the reasons indicated, I would affirm the district court's admission of the Complaint, under Rule 404(b), and Bailey's conviction.